## J. C. WARD v. M. A. WILSON ET AL.

### No. 646. Decided March 28, 1898.

**1. Judgment—Agreement Construed—Foreclosure—Personal Liability.**

Wilson suing to foreclose a vendor's lien on lands a part of which were claimed by defendant Ward, they agreed that Ward might pay its proportionate part of the debt against the land claimed by him according to the terms of the original contract of sale, he promising, if he failed to make the rest of the land bring its proportion on sale, to pay the balance, such remaining portion to be first sold to satisfy the indebtedness against the same, and the agreement to be carried out by the court as far as it could without affecting the interests of the plaintiff against the other defendants. Held, that such agreement warranted a personal judgment against Ward for its proportionate part of the debt, in connection with a decree for the sale of the land not claimed by him. (Pp. 24-27.)

**2. Suit—Agreement for Settlement—Pleading.**

When the parties to a suit filed a written agreement for compromise judgment, no further pleading is necessary therefor than to so state and pray for its enforcement, unless facts subsequently occur affecting the decree to be rendered. (P. 27.)

**3. Case Approved.**

The rulings of the Court of Civil Appeals in this case approved. (P. 27.)

ERROR to the Court of Civil Appeals for the Second District, upon writ of error to Clay County.

Ward prosecuted writ of error upon a judgment rendered against him in the District Court of Clay County upon the compromise agreement shown in the opinion, and subsequently obtained writ of error from the Supreme Court upon a judgment of the Court of Civil Appeals reforming the judgment of the lower court. 43 Southwestern Reporter, 833.

*J. H. Cobb* and *Flood, Hughes & Foster*, for plaintiff in error.—Since there was no pleading in the cause alleging any liability of defendant, J. C. Ward, to plaintiff for debt, a personal judgment for debt could not be rendered against him in favor of the plaintiff. Rev. Stats., arts. 1335, 1183, 1191; Hall v. Jackson, 3 Texas, 305; Pinchain v. Collard, 13 Texas, 334; Chrisman v. Miller, 15 Texas, 160.

If said judgment was rendered upon said purported agreement recited therein, still said agreement could only be considered in the light of evidence at most, and would not authorize a judgment without pleading. Storey v. Nichols, 22 Texas, 87; Gray v. Osborne, 24 Texas, 157; Hall v. Jackson, 3 Texas, 305; Frazier v. Woodward, 61 Texas, 450; Barton v. Nix, 20 Texas, 42.

Said purported agreement did not authorize said judgment, because: 1. It was nothing more than an agreement on the part of Ward to make 180 acres of land on which plaintiff was seeking to foreclose her vendor's lien bring the price that was chargeable against it at said foreclosure sale. And, as there could have been no foreclosure sale before judgment, there could have been no breach of contract. 2. As to the other 120 acres, the said Ward was to have to the year 1901 to pay for it, hence as to that part of it the judgment was certainly premature.

The court erred in rendering judgment against J. C. Ward for any sum of money without first rendering judgment against Martin Brooks and Emma and J. J. Pond, who had purchased said land and assumed payment of said purchase money notes, even if a judgment for money could have been rendered against him at all; because if said agreement authorized any judgment against J. C. Ward for money, it only authorized it against him as surety. Rev. Stats., arts. 1204, 3818; Woldert v. Durst, 38 S. W. Rep., 215.

*J. A. Templeton* and *H. A. Allen*, for defendants in error.—An answer of a defendant may be looked to in support of a judgment against him, and facts not alleged by a plaintiff may be pleaded by a defendant, and when so pleaded may be made the basis of a judgment. Lyon v. Logan, 68 Texas, 521; Hudson v. Willis, 65 Texas, 701; Hill v. George, 5 Texas, 87.

The agreement pleaded by plaintiff in her second supplemental petition, and which appears in the judgment, itself authorized the court

without additional pleadings to render judgment in accordance with the terms of said agreement.

Martin Brooks, Tompkins' vendee, having sold the two quarter sections of land in controversy to T. B. Gill and to Emma and J. J. Pond, and such purchasers having assumed the payment of the original purchase money for said lands, and Emma and J. J. Pond having abandoned their contract of purchase, neither they nor Martin Brooks were necessary parties to this action; and if defendant (Ward) desired a judgment against them in this suit he should have had them cited and made parties defendant herein; and having failed so to do he can not now complain that they were not made parties. Graham v. West, 26 S. W. Rep., 920; Pell v. Chandos, 27 S. W. Rep., 48; Evans v. Bentley, 29 S. W. Rep., 497.

GAINES, Chief Justice.—The following statement of this case is taken from the opinion of the Court of Civil Appeals, and we deem it sufficiently full for the purposes of this opinion:

"M. A. Boone, under her former name of M. A. Wilson, conveyed to one M. J. Tompkins five quarter sections of land lying in Clay County, Texas, for which on September 21, 1891, he executed his five promissory notes, each in the sum of $960, payable to Mrs. M. A. Wilson, and numbered 3, 7, 9, 11, and 14. The notes were payable on the 21st of September, 1901, but it was provided that each should bear interest at 8 per cent per annum, payable on the 21st day of September of each year, and that if the interest should remain unpaid for ten days after maturity thereof, the legal holder could at once declare the entire obligation due and payable.

"A default having been made in the payment of interest as thus stipulated, plaintiff exercised the option provided for, and brought suit on February 22, 1896, against divers parties claiming interests in the sections, including J. C. Ward, the plaintiff in error. The latter was duly cited, and from his answer filed at the succeeding March term, 1896, it appears that he claimed an interest of 60 acres out of the south one-half of the northwest one-quarter of section 53, and also an interest of 80 acres out of the north half of the northeast quarter of section 58; his claim in each instance being by purchase from J. J. and Emma Pond, to whom M. Brooks, the vendee of Tompkins, had sold 60 acres out of the south half of the northwest quarter of section 53 and all of the northeast quarter of section 58. It was alleged that J. J. and Emma Pond, in consideration of this conveyance, had assumed to pay $360 of note 11 and interest, and all of note 14, and that Ward did not assume to pay any part of the indebtedness. Of note 11, the sum of $640 was alleged to have been assumed by one T. B. Gill, a purchaser of 100 acres off the north end of the northwest quarter of section 53.

"At the same term of the court the following agreement as to the matters in controversy between the plaintiff and J. C. Ward was signed by the attorneys for the parties respectively:

" 'M. A. Wilson v. T. B. Gill et al.—In District Court of Clay County, Texas, March Term, 1896.

" 'In the above entitled cause it is agreed that, whereas J. C. Ward claims a part of the land in controversy herein, which he purchased from J. J. and Emma Pond, viz., 60 acres off the south end of the N. W. $\frac{1}{4}$ of sec. 53, and 80 acres off of the north end of the N. E. $\frac{1}{4}$ of sec. 58; which land is more particularly described in said J. C. Ward's pleading; and whereas said land is subject to plaintiff's lien to secure notes Nos. 11 and 14, given by M. J. Tompkins for said quarter section of land respectively, which notes are sued on herein; and whereas, said J. C. Ward has paid a part of the interest due on said notes, and desires to continue to pay his pro rata part of said notes, for which the land held by him is equitably bound according to the terms of the original contract between plaintiff and said Tompkins.

" 'Now, therefore, it is hereby agreed by and between the plaintiff herein and said J. C. Ward, that said J. C. Ward shall have the right to continue to carry out said original contract, in so far as the incumbrance equitably chargeable against the land so held by him is concerned, and said plaintiff hereby agrees to permit said defendant to make the payment of the amounts, principal and interest, of said indebtedness, which is equitably chargeable against said land so held by J. C. Ward according to the terms of the original contract of sale. And said J. C. Ward hereby agrees and binds himself to make the remaining portion of the said quarter sections of land sell for enough to pay off and satisfy all that part of the indebtedness above mentioned, which is properly chargeable against the same, or upon his failure to make said land bring said amount so properly chargeable against same, the said J. C. Ward agrees to pay such balance, and upon so doing he shall be entitled to and may have an assignment to him of a pro rata part of the judgment which he may have to pay in order to protect his interest herein. That is to say, all of such indebtedness other than the indebtedness properly chargeable against the land so held by said J. C. Ward; and it is agreed that the remaining portion of said quarter section may be first sold to satisfy the said indebtedness against same, and that the lands so held by Ward shall only be liable for the balance due after such sale. And as to such balance, payment thereof shall be made as above specified.

" 'But it is expressly understood that this agreement shall not have the effect to waive or in any manner impair the plaintiff's lien against said quarter section of land for the full amount of said note until same is fully paid.

" 'It is also understood and agreed that this agreement shall not be taken or construed as in any manner affecting the plaintiff's rights against any of the remaining defendants herein, or against lands held by them respectively, and the court in the decree to be rendered in this cause shall have full power to adjust all of the equities of the various parties, to the same extent as he could do were no such agreement

made; but in so far as this agreement can be enforced and carried out by the court, without affecting the interest of the plaintiff as against the remaining defendants, same shall be done.

> " 'M. A Boone, née M. A. Wilson, Plaintiff,
> " 'By J. A. Templeton, Attorney for Plaintiff.
> " 'J. C. Ward, by J. H. Cobb, his Attorney.'

"Thereafter, at the same term, the cause was continued. At the succeeding September term the plaintiff filed a second supplemental petition, purporting to be in reply to the answer of the defendant Ward, in which she declared upon the written agreement already referred to, alleging the maturity of the notes 11 and 14, on account of the failure to pay interest as therein stipulated, and praying a personal judgment against Ward, in accordance with the terms of the agreement.

"On October 14, 1896, the court entered judgment reciting the appearance of 'both parties;' that they announced ready for trial, waiving a jury, and submitting the matters of fact as well as of law to the court; and further reciting that the court heard the pleadings, evidence, and argument of the counsel. The court, among other matters, rendered a personal judgment, by virtue of the agreement referred to, in the sum of $2376 against Ward."

The trial court seem to have held Ward liable as upon an assumpsit for the entire purchase money of the two quarter sections of land in controversy; but the Court of Civil Appeals were of the opinion that under the written agreement he was liable only for the purchase price of those portions of the two tracts which had not been conveyed to him. They reformed the judgment accordingly and reduced the recovery to the sum of $1377.98.

Ward alone applied to us for a writ of error, and it was granted, because we were of the opinion that the agreement which was made bebetween the attorneys of the plaintiff and those of Ward during the pendency of the suit did not authorize a judgment against him for any sum whatever until the portions not claimed by him of the two quarter sections in controversy had first been sold under a decree of the court and had failed to bring a sufficient sum to discharge the proportionate part of the purchase money to be charged against them under the stipulation. But a more careful consideration of the writing has led us to the conclusion that we were mistaken in this respect, and that the Court of Civil Appeals were correct in holding Ward upon his assumpsit in the suit then pending. That it was an agreement to affect the disposition of an existing suit is shown by the caption, which gives the style of the case and the court in which the suit was brought. After providing that Ward is to make "the remaining portions of said quarter sections of land sell for enough to pay off and satisfy all that part of the indebtedness above mentioned which is properly chargeable against the same," and that in case he failed to do so he should pay the balance, etc., the further stipulation is inserted, that "it is agreed that the re-

maining portion of said quarter sections may be first sold to satisfy the said indebtedness against same, and that the lands so held by Ward shall only be liable for the balance due after such sale." This clearly shows that a decree was to be entered for the sale, and as we think tends also to show that it was intended that the decree should provide that Ward should discharge the balance, if any, which should remain after such sale. Again, after stipulating that the agreement shall not affect the rights of the plaintiff as against the other parties to the suit, we find the emphatic declaration, "but in so far as this agreement can be enforced and carried out by the court, without affecting the interests of the plaintiff against the remaining defendants, same shall be done." This the court has done. Nominally the judgment even as corrected by the Court of Civil Appeals is for a greater amount than the defendant Ward agreed to pay, but its effect is to render him liable only for the sum assumed by him—namely, the balance, if any, which may remain after deducting the proceeds of the land to be first sold for its payment. This could be done by the court in the enforcement of the stipulations of the agreement without injustice to Ward, and the contract was that the court should enforce the agreement so far as it could be done, without affecting plaintiff's right against his codefendants.

In her plea setting up the agreement, the plaintiff mentioned the quarter of section 58 but failed to mention that of section 53, and it was urged in the Court of Civil Appeals, and it is here insisted, that under her pleading she should not have recovered as to the latter. The omission is clearly inadvertent. The allegations of the supplemental petition taken together clearly show that she was claiming all she was entitled to under the agreement, which was referred to as an exhibit and made a part of the pleading. We are of the opinion that when the parties to a suit, after fully pleading and setting up their respective rights, enter into a written agreement for a compromise of the litigation, which is filed among the papers of the cause, no further pleading is necessary, in order to have judgment upon it, than to state the fact and pray that the stipulations may be enforced; unless perchance some fact affecting the decree to be rendered may have occurred after the agreement was executed. The fact of Ward's subsequent default in the payment of interest was alleged in the pleading in question.

The other questions presented were correctly disposed of in the opinion of the Court of Civil Appeals, and we deem it unnecessary to discuss them.

We find no error in the judgment, and it is affirmed.

*Affirmed.*