ZEIGEL et al. v. MAGEE et al.   (No. 5467.)

(Court of Civil Appeals of Texas. San Antonio. April 28, 1915. Rehearing Denied May 19, 1915.)

1. LIMITATION OF ACTIONS ☞167—EFFECT OF BAR—VENDOR'S LIEN.

When a warranty deed is made to lands on which the purchase money has not been paid, and no express lien is retained in the deed or the purchase-money notes, the superior title passes to the vendee, and though a vendor's lien will be created it will become invalid when the notes are barred by limitations, and a recital in the deed or notes that the purchase money is unpaid is not sufficient.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 651–653; Dec. Dig. ☞167.]

2. LIMITATION OF ACTIONS ☞167—EFFECT OF BAR—VENDOR'S LIEN.

Though an absolute deed with warranty is made if a vendor's lien is retained in the deed or in the purchase-money notes, the contract is executory and the legal title remains in the vendor, and though the debt for the purchase money is barred by limitations, the vendor can recover the land at least from the vendee or from purchasers with notice, actual or constructive, of the retention of the lien.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 651–653; Dec. Dig. ☞167.]

3. VENDOR AND PURCHASER ☞230 — BONA FIDE PURCHASERS—CONSTRUCTIVE NOTICE—RECITALS IN CONVEYANCE.

Where the notes for the purchase price of land expressly retained a vendor's lien, and the deed to the land recited that the consideration was a note for $600 "which said note is a vendor's lien," such recital put subsequent purchas-

ers on inquiry as to the retention of the lien in the notes, the deed having been recorded.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 502–512; Dec. Dig. ☞230.]

4. PRINCIPAL AND AGENT ☞103—POWER OF ATTORNEY TO SELL LAND — VALIDITY OF DEED.

Where a power of attorney from C. to M. authorized M. to sell land at such prices upon such terms as he might deem best and proper, and C. agreed that the land should be sold to Z. if he would pay the costs of a pending suit concerning the land, which Z. agreed to do, whereupon M. executed a deed to the land to him, the deed should have been admitted in evidence in an action involving the title.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 278–293, 353–359, 367; Dec. Dig. ☞103.]

5. TRIAL ☞140—QUESTIONS FOR JURY.

The jury alone could pass upon the credibility of witnesses and the weight to be given their testimony, and though the trial judge doubted the testimony he had no authority to discard it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 334, 335; Dec. Dig. ☞140.]

6. DEEDS ☞15—CONSIDERATION—NECESSITY.

Where Z. deeded land to his agent, who was authorized to sell and who did sell the land reserving a vendor's lien for the unpaid purchase price and transferred the purchase-money note to Z., no consideration was necessary for a deed from the agent to Z. transferring the superior title to Z., as it merely placed the legal title in the man to whom it belonged.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 23; Dec. Dig. ☞15.]

7. LIMITATION OF ACTIONS ☞182—BAR OF DEBT — FORECLOSURE OF LIEN — NECESSITY OF PLEADING.

In a suit in which it was sought to foreclose a vendor's lien, the lien could be foreclosed notwithstanding the running of limitations against the debt as against defendants who did not plead the statute.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 676–680, 682, 695, 705; Dec. Dig. ☞182.]

8. EVIDENCE ☞219—ADMISSIONS — WRITTEN AGREEMENTS.

In a suit in which it was sought to enforce a vendor's lien, an agreement between the holder of the lien and certain defendants in the nature of a compromise, and amounting to an admission that the lien was valid so far as the land of such defendants was concerned if the existence of the purchase-money note was shown, was improperly excluded.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 762–770; Dec. Dig. ☞219.]

9. EXECUTION ☞272—SALE—RIGHTS OF PURCHASER—EXISTING LIENS.

In a suit in which it was sought to enforce a vendor's lien against persons claiming under a sale under execution against the C. company, the recitals in a mortgage given by the C. company that there was a lien on the land could have no probative force, and were properly rejected.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 771, 781–788; Dec. Dig. ☞272.]

Error from District Court, Harris County; Chas. E. Ashe, Judge.

Action by Ortman W. Crawford against Sarah M. Magee and others in which Catherine Zeigel and others were made parties.

To review the judgment, Catherine Zeigel and others bring error. Reversed and remanded.

Tharp & Tharp and Stevens & Stevens, all of Houston, for plaintiffs in error. John G. Tod and L. B. Moody, both of Houston, for defendants in error.

FLY, C. J. On October 5, 1906, Ortman W. Crawford instituted an action of trespass to try title to 300 acres of land out of the Talcott Patching survey in Harris county against Sarah M. Magee and J. P. Magee. In May, 1909, Henry W. Zeigel intervened in the suit, alleging that in June, 1885, Ortman W. Crawford was the holder of the legal title to the land in controversy, holding it in trust for intervener; that Crawford conveyed the land to the Cattle Ranch & Freehold Land Company, which executed its note for $600 to Crawford for balance of purchase money; that said note expressly retained the vendor's lien on said land to secure its payment; that the defendants in the case held the land in controversy under mesne conveyances from said Ranch & Freehold Company, but that the superior title to the land was in Crawford; that in 1886, Crawford assigned the note to intervener in compliance with his duty as trustee, and intervener thereby became its owner and holder, and that on May 4, 1909, Crawford, acting through H. P. Mansfield, conveyed the superior title to the land to Henry W. Zeigel. Intervener prayed for a judgment for his debt and a foreclosure of his lien on the land, and in the alternative for title and possession of the land. Henry W. Zeigel died and his heirs made themselves parties. The Houston Land & Irrigation Company, claiming 100 acres of the land, was made a party, and answered pleading laches, and three, four, and five years limitation. J. W. Bennett, independent executor of the will of Sarah M. Magee, deceased, answered that he was willing to pay off the note if its existence was established, but asked that in satisfaction of the vendor's lien the 100 acres of land owned by the Houston Land & Irrigation Company be first sold.

[1–3] It is the established rule in Texas that when a warranty deed is made to land on which the purchase money has not been paid, and no express lien is retained in the deed or the notes for purchase money, the superior title passes to the vendee, and although a vendor's lien will be created it will become invalid when the notes are barred by limitation. The mere recitation of the fact in deed or note, or both, that the purchase money is unpaid does not have the effect of retaining the superior title. When an absolute deed with warranty is made the contract is an executed one and passes the superior title, but if a vendor's lien is retained in deed or purchase-money notes, so the

courts hold, the contract is executory, and the legal title remains in the vendor, and although the debt for purchase money is barred by limitations, the vendor can recover the land. Baker v. Compton, 52 Tex. 252; McKelvain v. Allen, 58 Tex. 383. These two decisions have been uniformly followed and never questioned, and so far as dealings between the vendor and vendee are concerned, and as to others with notice, actual or constructive, of the retention of the vendor's lien, are no doubt sound and correct. However, when no lien is retained by the vendor in the deed, and an innocent purchaser has no notice of an admission of a vendor's lien in the note, it is stretching the doctrine of the superior title being held by the vendor to what appears to the writer to a very unreasonable and unjust extent. Usually the deed is recorded, and if a lien is retained therein, the world must take notice, but when the lien is merely acknowledged to be in existence in an unrecorded promissory note it would be the height of injustice to hold either that no notice is necessary to third parties, or that the contents of the note are constructive notice to third parties. While this is true, if there be recitations in the deed reasonably sufficient to put parties on inquiry as to the lien, a failure to make such inquiry would be such laches as to deprive a person of pleading a want of notice. In June, 1885, Ortman W. Crawford sold the land in controversy to the Cattle Ranch & Freehold Land Co., reciting in the deed that the consideration was a note for $600 "which said note is a vendor's lien." That deed was filed for record on June 29, 1885, and gave such information as to lead any one to inquire as to the terms of the promissory note, if it was not in effect a declaration that a vendor's lien was retained in the note. It is not merely a recitation that the note was given for the purchase money, but it goes farther and declares that the note constitutes a vendor's lien, and is in effect a statement that the vendor's lien was retained. In the case of Anderson v. Silliman, 92 Tex. 560, 50 S. W. 576, there was no lien reserved in the deed, and it was not even recited that a note was given for any purchase money; but in a note given for the purchase money it was recited that "this note holds a vendor's lien on the same until paid," and the Supreme Court held that the legal title remained in the vendor. "Which said note is a vendor's lien" is probably as strong as that quoted, but if not, it was sufficient to put any subsequent purchaser upon inquiry as to the note. One witness swore that the note in terms retained the vendor's lien. The question of notice did not arise under the facts of the case cited.

[4] The power of attorney from Crawford to Mansfield authorized him to sell the land "at such prices upon such terms as he may deem best and proper," and it was proved that Crawford agreed that the land should be sold to Zeigel if he would agree to pay the costs of this suit, which was then pending. Zeigel agreed to assume payment of the costs, and Mansfield executed a deed to the land to him. The deed should have been admitted in evidence and the court erred in rejecting it.

[5] It was shown that the title to the land was in Amelia F. Zeigel, who was holding it for her father, Henry W. Zeigel. He desired to sell the land, and in order to do so had his daughter to convey it to his agent, Ortman W. Crawford, who was authorized to sell. He sold it to the Cattle Ranch & Freehold Company, receiving $1,100 in cash and a promissory note for $600. He failed to pay over the cash to Zeigel, but indorsed the note to him and promised to repay the $1,100 collected by him. Crawford instituted this suit in his own name, but afterwards authorized Mansfield to act as his agent and he sold the legal title that Crawford had to Henry W. Zeigel. The land was sold under execution prior to the institution of this suit, as the property of the Cattle Ranch & Freehold Company, to John Bennett, who sold a part of it to Sarah M. Eustace, afterwards Magee, and the other part to Dr. A. L. Wray and others. The common source was Amelia F. Zeigel. If the superior title was in Crawford after the sale of the land by him, it was in him when he, through Mansfield, conveyed it to Henry W. Zeigel, and that conveyance passed the legal title to the latter. The evidence made a case to go before a jury on the facts, and the court erred in instructing a verdict for appellees. The note was not shown to have been paid, and however much the trial judge may have doubted the testimony as to the transactions in connection with its contents, no authority was vested in him to discard the testimony. The jury alone could pass upon the credibility of the witnesses and the weight to be given their testimony.

[6] In regard to the deed from Crawford, through his attorney in fact, Mansfield, to Zeigel, no consideration was necessary, as the instrument merely placed the legal title in the man to whom of right it belonged. Crawford set up no claim to the land in his own right, and did not question Zeigel's right to it. All he sought was to get Zeigel to be responsible for the costs of the suit. He fully ratified the acts of Mansfield in making the sale.

[7] The Magees did not plead the statute of limitations against the note, and in the absence of such plea the lien could have been foreclosed as to their part of the land.

[8] Appellants offered in evidence a contract and agreement made by them and the Magees in regard to their part of the land, and it should not have been rejected by the court. It was in the nature of a compromise between appellants and the Magees and,

as to them, was valid testimony. Ward v. Wilson, 92 Tex. 22, 45 S. W. 8. It was a valid and binding agreement. It was really an admission that the lien was valid so far as the 200 acres was concerned, if the existence of the note was shown.

[9] The sixth assignment of error is overruled. The recitations in a mortgage given by the Cattle Ranch & Freehold Company to Charles Edward Hobson, in which it was admitted that there was a lien on the land for $600, could have no probative force in this suit, and it was very properly rejected.

The court seemed to be satisfied as to the sufficiency of the proof in regard to Henry W. Zeigel having obtained possession of the note from Crawford and of its loss, but the evidence might be made clearer. Henry W. Zeigel is obscure, if not contradictory, as to what he did with the note, at one time testifying that he placed it in the hands of Texas lawyers for collection and at another with a lawyer of Buffalo, New York. No one claims that the note was ever paid, and on the subject of the ownership of the note the evidence is perhaps sufficient, but the loss and search for the note should be made clearer. Under the state of the testimony this court will not render judgment against the Magees, but will send the whole case back for another trial.

The judgment is reversed and the cause remanded.