DUNDEE MORTGAGE & TRUST INVESTMENT CO., Limited, v. HUGHES.

(Circuit Court, D. Oregon.    August 4, 1898.)

1. FOREIGN CORPORATIONS—RIGHT TO SUE—EFFECT OF DISSOLUTION.
    The Oregon statute which limits the life of a corporation after its dis-
    solution to five years, during which it may maintain actions necessary
    in the winding up of its affairs, has no application to foreign corpora-
    tions, whose corporate existence depends entirely on the law of their
    domicile; and where, under such law, a corporation continues to have
    the right to sue indefinitely after dissolution in closing up its former
    business, such right will be recognized in other jurisdictions.

2. PARTIES—REAL PARTY IN INTEREST—TRANSFER OF INTEREST PENDING SUIT.
    Under the statutes of Oregon (1 Hill's Ann. Laws, §§ 27, 38) requiring
    every action to be prosecuted in the name of the real party in interest,
    but providing that no action shall abate by the transfer of any interest
    therein, if the cause of action continue, when an action has been com-
    menced by the real party in interest his subsequent transfer of his in-
    terest will not prevent its prosecution to judgment in his name.

This was a hearing on a plea setting up matter in abatement.

William T. Muir and J. W. Whalley, for plaintiff.

Ellis G. Hughes, in pro. per.

GILBERT, Circuit Judge.    The defendant in this case filed a sup-
plemental answer in the nature of a plea in abatement, alleging:
First, that in the year 1889 the plaintiff, which is a corporation organ-
ized under the laws of Great Britain and Ireland, having its principal
place of business in Dundee, Scotland, was duly and regularly wound
up, dissolved, and lost its corporate existence and powers, further
than might be necessary to wind up its affairs, and that at the present
date it had no legal existence; and, second, that in September, 1889,
the plaintiff had amalgamated with the Alliance Trust Company, a cor-
poration of Dundee, Scotland, and had transferred to the latter com-
pany its demand against the defendant, and that under the laws of
Oregon it had now no authority to prosecute the present action in its
own name.    The plaintiff, by replication, substantially denied these
allegations.    Depositions were taken in Dundee, Scotland, concerning
the issues so raised, and the plea is now presented to the court for de-
cision.    There is no controversy as to the facts.    On September 27,
1889, a provisional agreement was entered into by and between the
plaintiff and the Alliance Trust Company, Limited, of Dundee, Scot-
land, for the purpose of amalgamating the former company with the
latter.    In the first article of the agreement it is provided that all
the property, estates, and assets, of every kind, of and belonging to
the plaintiff, excepting, first, its uncalled capital, and, second, the as-
sets specified in Schedule A, "are hereby agreed to be sold, conveyed,
and transferred to and vested in the Alliance Company absolutely,
subject, nevertheless, to all existing charges thereon."    In the third
clause it is said it is the intention of the contracting parties that the
Alliance Company shall take only such interest in and title to the
premises respectively as the Mortgage Company then had; "but it is
also hereby agreed and declared that the Alliance Company may raise,
insist on, and enforce all judgments and decrees obtained in all or any
suits or actions applicable to or for the recovery of the said property,

estates, or assets, or any part thereof, in the name of the Mortgage Company and its liquidator as well as in its own name, or in its name alone, or in the name of the Mortgage Company alone, or in the name of the Mortgage Company and its liquidator alone, or in any other way or manner which the Alliance Company may think right." In the fifth article it is provided that "the purchase and transfer hereby agreed upon shall be completed on the 1st November, 1889.  *  *  * And the Mortgage Company and its liquidator shall execute and deliver, at the cost of the Alliance Company, all proper conveyances and assurances of the property and assets hereby agreed to be sold, and shall give up possession of all offices and hereditaments occupied by them, and shall deliver up all books, vouchers, papers, furniture, cash, bonds, bills, and securities and other property transferable by delivery." In the sixth article it is agreed "that all deeds, authorities, powers, or things which may be necessary to vest the assets of the Mortgage Company fully and absolutely in the Alliance Company *  *  *  shall be made, granted, executed, delivered, and done by the Mortgage Company and its liquidator to the Alliance Company, as well upon as at any time or times after the completion of the said purchase." On October 23, 1889, the plaintiff duly confirmed the provisional agreement. The defendant presents the deposition of William McKenzie, the secretary of the plaintiff, who testified that the amalgamation took place in October, 1889, and that the provisional agreement was the only instrument which had passed between the two corporations affecting the claim which the plaintiff held against the defendant, and which is the subject of the present action. Referring to the sixth clause of the agreement, he testified further "that, while the Alliance Company had, therefore, the right to ask for a transference of any asset, it, as a matter of fact, abstained from doing so in many cases. Amongst the matters which have not been assigned or transferred is the Dundee Mortgage Company's action against the said Ellis G. Hughes."

Has the plaintiff lost its corporate existence, so that the action must abate, or, if it be still in existence, has the cause of action been so transferred to another that it may not be prosecuted in the plaintiff's name? These are the questions which the record presents. It is contended by the defendant that whether or not the plaintiff is still in existence as a corporation depends, not upon the law of Scotland, but upon the law of the forum where the action is prosecuted,—the law of Oregon,—and that, inasmuch as by the local law no corporation can exist beyond a term of five years for the purpose of winding up after a dissolution has been had, the plaintiff, although a foreign corporation, is subject to that law, and became defunct upon the expiration of five years from the date of its amalgamation with the Alliance Company. There can be no doubt that under the provisions of the companies' acts the plaintiff is in existence at Dundee, Scotland, for all purposes necessary to its winding up. Under the terms of those acts no limitation is fixed upon the length of a corporation's life after dissolution or after amalgamation for the purpose of winding up its affairs. Its existence is prolonged only for that purpose. It may not enter into other enterprises, or undertake new ventures, or carry

on business. It may do only that which is necessary for the purpose of closing its business. I think there can be no doubt that if, for this purpose, the plaintiff is still in existence by the law of Great Britain and Ireland, its existence must be recognized in the state of Oregon for the same purpose.

It is urged that, inasmuch as foreign corporations do business in this state only by permission of its authority, they become subject to the law just quoted by reason of the rule of comity, which prescribes that foreign corporations may not do business within this state on more favorable or advantageous terms than domestic corporations. It may, be said to this that the law concerning the dissolution of corporations has nothing to do with the terms on which corporations do business in the state. All foreign corporations doing business in this state under permission of its laws obtain their corporate life from the laws of the states or countries whence they come. If they are in existence at their home offices, they are recognized as being in existence here. Such a corporation is controlled, as to its dissolution, by the laws of its domicile, and is not affected by laws which are intended to govern the dissolution of corporations created under the local laws. The Oregon law (section 3233, 2 Hill's Ann. Laws) provides as follows:

"All corporations that expire by limitation specified in their articles of incorporation, or are dissolved by virtue of the provisions of section 3235, or are annulled by forfeiture or other cause by the judgment of a court, continue to exist as bodies corporate for a period of five years thereafter, if necessary for the purpose of prosecuting or defending actions, suits, or proceedings by or against them, settling their business, disposing of their property, and dividing their capital stock, but not for the purpose of continuing their corporate business."

The plaintiff corporation is not included in the corporations to which this section refers. It is not a corporation which has expired "by limitation," nor has it been dissolved under the provisions of section 3235. Section 3235 refers only to corporations "organized under the provisions of this chapter," nor has it been "annulled by forfeiture or other cause by the judgment of a court." The plaintiff corporation still exists for the purpose of winding up its business. The prosecution of the present suit may be presumed to be a portion of that business. It was a suit which had been begun before the amalgamation, and is directly connected with the winding up of its affairs.

Concerning the second question, it may be said that the record leaves it doubtful whether this cause of action has in fact been transferred to the Alliance Company. But conceding that it has been so transferred, I think it may nevertheless be maintained in the plaintiff's name. The Code of Oregon, while providing, as do the codes of other states, that "every action shall be prosecuted in the name of the real party in interest" (section 27, 1 Hill's Ann. Laws), contains the further provision, found in section 38, that "no action shall abate by the death, marriage or other disability of a party; or by the transfer of any interest therein if the cause of action survive or continue. In case of the death, marriage or other disability of a party, the court may at any time within one year thereafter on motion allow the action to be continued by or against his personal representatives or successor

in interest." In construing these sections of the Code, it has been held in this court that the word "prosecuted," as used in section 27, means "commenced," and that when an action has been commenced by the real party in interest his subsequent transfer of such interest "shall not abate the action, or prevent his prosecuting it to final judgment, or its being so prosecuted in his name for the benefit of whom it may concern." Elliott v. Teal, 5 Sawy. 188, Fed. Cas. No. 4,396. See, also, French v. Edwards, 4 Sawy. 128, Fed. Cas. No. 5,097; Moss v. Shear, 30 Cal. 475; Camarillo v. Fenlon, 49 Cal. 203. There can be no doubt that the construction adopted by the court in Elliott v. Teal is the true one. Due force and effect must be given to both sections of the Code. They must be construed together. So interpreted, their meaning is that all actions must be prosecuted in the name of the real party in interest, except in cases where, pendente lite, he transfers his interest to another. In such a case the transfer does not operate to abate the action, and no order of substitution of parties is required. It is only in case of the death, marriage, or other disability of a party to a pending action that the court is permitted or required to make an order of substitution. Judgment will be rendered for the plaintiff upon the plea.