WESTWATER v. LYONS.

(Circuit Court of Appeals, Third Circuit. February 23, 1912.)

No. 87 (1,564).

**1.** BILLS AND NOTES (§ 537*)—ACCOMMODATION NOTES—PARTICIPATION IN FRAUD—JURY QUESTIONS.

In an action on an accommodation note, carried by a bank fraudulently, whether the indorser participated in the fraud, and whether he signed for the accommodation of the bank, or to accommodate its officers, *held* under the evidence jury questions.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1862–1894; Dec. Dig. § 537.*]

**2.** BANKS AND BANKING (§ 98*)—POWERS—ACCOMMODATION NOTES.

A bank may hold a note for its own accommodation under the ordinary relationship governing accommodation paper.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 232–235; Dec. Dig. § 98.*]

**8.** EVIDENCE (§ 423*)—PAROL OR EXTRINSIC EVIDENCE—ACCOMMODATION NOTES.

A national bank having failed to sell an entire issue of stock, which was necessary before it could do business on increased capital, a third person in accordance with an agreement between the officers, gave his note for the price of the remaining shares to a director, who indorsed and delivered it to the bank; the shares being issued in his name. The maker having become insolvent, defendant was induced by such director to execute his accommodation note to the director's uncle, who indorsed it, and it was substituted for that of the first maker. The notes were carried and reported as assets of the bank until its failure; but neither maker paid any interest, the dividends on the stock being applied thereon. The cashier gave defendant a letter assuring him that he would not be held liable on his note. *Held*, that instructions which assumed that the letter was admissible only as evidence of a release by the bank of any liability of defendant if he was innocent in the transaction were erroneous; the letter being also admissible as tending to show that the note was given as an accommodation to the bank.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1962; Dec. Dig. § 423.*]

**4.** BILLS AND NOTES (§ 538*)—ACCOMMODATION NOTES—ACTIONS—INSTRUCTIONS.

An instruction that if defendant accommodated the bank, and did not know for what purpose the note was to be used, verdict might be for defendant if the directors authorized the letter, was improper, since he was entitled to a verdict if the note was made for the bank's accommodation innocently.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1895–1910; Dec. Dig. § 538.*]

**5.** WITNESSES (§ 345*)—CREDIBILITY—CONVICTION OF CRIME.

It was error to require a witness to testify on cross-examination that he had been indicted for an offense relating to the bank.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1126–1128; Dec. Dig. § 345.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

---

Action by Robert Lyons, receiver of the Cosmopolitan National Bank of Pittsburgh, against James Westwater. Judgment for plaintiff, and defendant brings error. Reversed, and new trial ordered.

James G. Westwater (Burleigh & Challener and E. Y. Breck, on the brief), for plaintiff in error.

John S. Wendt, for defendant in error.

Before GRAY, Circuit Judge, and BRADFORD and YOUNG, District Judges.

GRAY, Circuit Judge. This action was originally brought by the defendant in error, as receiver, against Westwater, the plaintiff in error, to recover the sum of $37,500 on a promissory note. The case was pleaded to issue and tried in the court below. At the conclusion of the hearing, the court took the case from the jury and instructed them to find a verdict for the defendant, reserving for further consideration the question of liability. Thereafter the court denied a motion by the plaintiff for judgment, non obstante veredicto, for the full amount of the note sued on. 173 Fed. 111. The receiver thereupon sued out a writ of error, and this court reversed the judgment of the court below, with a venire de novo, on the ground that there were disputed questions of fact which should have been submitted to the jury. 181 Fed. 681, 104 C. C. A. 663. The cause then came on for trial for the second time before the court below and a jury, which resulted in a verdict for the receiver, and judgment was entered in his favor in the sum of $43,425. On a writ of error sued out by Westwater, the defendant below, the case is again before this court.

[1] The material facts disclosed by the record are as follows:

About January 1, 1905, the Cosmopolitan National Bank decided to increase its capital stock from $200,000 to $500,000, said increase consisting of 3,000 shares of the par value of $100 each, which were offered to subscribers at $125 per share. After all but 300 of the said 3,000 shares had been subscribed for, F. H. McKinnie, who was second vice president of the bank, procured one J. D. Lyon to make his promissory note for $37,500 (the value of 300 shares at $125 per share), dated July 5, 1905, and payable on demand to the order of said McKinnie, who indorsed the note and delivered it to the said bank, which discounted it, and the proceeds thereof, having been credited on its books to F. H. McKinnie, were then applied to the bank's increased capital stock account. Thereupon the bank in due course issued certificates for the said 300 shares of its stock to certain of its directors, to which of them does not clearly appear from the record. On July 13, 1905, a report was made by the bank to the Comptroller of the Currency, that the increased capital stock, amounting to $300,000, had been paid in, and the Comptroller then issued his certificate to that effect and the bank thereupon commenced and thereafter continued to do business on the basis of a paid-up capital stock of $500,000. (See section 5142 of the Revised Statutes [U. S. Comp. St. 1901, p. 3462] providing that "no increase of capital stock shall be valid until the whole amount of such increase is

paid in.") After the 300 shares ·of stock had been issued, it was transferred to and held by McKinnie, McClurg and Richmond, members of the board of directors of the bank, who agreed among themselves and with the cashier, D. J. Richardson, that the certificate for the said 300 shares ·should be so held for sale to such persons as might be induced to purchase them. As a matter of fact, no purchasers were ever found for this stock. The said note of·J. D. Lyon for $37,500 was regularly discounted and entered on the books of' the bank and carried as an asset until February, 1907, when the bank examiner and the Comptroller of the Currency objected to the same as an asset, because Lyon had failed in business and McKinnie's·credit was not good. They therefore required the directors of the bank to have Lyon's note paid or some good commercial paper substituted therefor.

McKinnie, after testifying that he was a director and vice president of the bank at the time of all these transactions, says:

"The cashier asked me if I could procure him a note for $37,500 for the bank's use; to use in place of a note for $37,500 made by J. D. Lyon for 300 shares of stock, as the bank examiner had requested him to take the Lyon note out or have it stiffened up."

That his friend, Westwater, from Columbus, Ohio, then happened to ·be in town, and he thought he would try to get him to make a note for the purpose. According to Westwater, he and McKinnie were great friends. McKinnie testifies that he asked him as a personal favor to make the note for $37,500, as the bank wanted to use it in place of a note that had been taken out; that Westwater asked, "What assurance have I that I won't be held responsible?" and that he said:

"The bank and its officers will give you a letter to that effect. Westwater replied if they did that, he would give me the note."

He then testifies that he, McKinnie, went to the bank and told the cashier and president, and they agreed to give him a letter. He says, also, that he told Westwater that 300 shares of stock were lying in the bank, "that we were selling it, or endeavoring to sell it, in order to take this note up." Richardson, the cashier, and McClurg, the president, seem to have authorized this statement by McKinnie to Westwater, that the note was for the bank's use, without stating what use, and that he would not be called upon to pay it. Westwater's testimony was to the same effect. He testifies at some length, and with some conflict with his testimony in the former case, that McKinnie did not tell him anything, except that he wanted that piece of paper for.the bank, and that he was not to be held responsible on the note. When asked if it were made as an accommodation to McKinnie, he answered "No," that it was for an accommodation to the bank that he made the note.and delivered it to McKinnie, and on the understanding that he was not to be held responsible for it, he told him that he would do it for them, and the note.was made payable to Mr. Bean, the uncle of McKinnie, and there is evidence tending to show that Bean indorsed it and that:McKinnie delivered the same to the bank in lieu of the Lyon note.

This was substantially the evidence in the former trial, at the conclusion of which, as we have said, the court below instructed the jury to render a verdict in favor of the defendant, which this court reversed on the ground that the liability was not a question of law for the court, but a question of fact for the jury, depending largely upon whether Westwater, the maker of the note, made it for the accommodation of McKinnie or of the bank. Judge Lanning, who delivered the opinion of the court, used the following language:

"That he was an accommodation maker, either for the bank or for Mc-Kinnie and his associates, is certain. If his accommodation was to Mc-Kinnie and his associates, the receiver is entitled to recover; and if to the bank, there can be no recovery."

This was said without special reference to the letter which McKinnie promised Westwater, as a condition of his signing the note, the cashier would send him, corroborating his (McKinnie's) statement that the note was for the bank's use, and that Westwater would not be called upon to pay it. McKinnie's testimony is, as above stated, that, after his interview with Westwater, he reported the same to Richardson, the cashier, and McClurg, the president, who both assented to the giving of the letter which was accordingly sent the next day to Westwater at his home in Columbus, Ohio. The note is as follows:

"Pittsburg, Pa., Feb. 23, '07.

"Mr. James Westwater, Columbus, Ohio—Dear Sir: Your note for $37,-500.00 for four months, to the order of H. R. Bean, received from Mr. Mc-Kinnie this a. m. It is explicitly understood that there is no liability attached to you for this note, the same being used by Mr. McKinnie as a substitute for another note. We hereby agree to return the same to you at any time upon request without payment being made for the possession thereof.                    Very truly yours,        D. J. Richardson, Cashier."

Westwater renewed this note from time to time until the note in suit was given. He paid no interest at renewals, and the bank applied the dividends on the 300 shares of its own stock held by it to such interest payment. There is no direct evidence that Westwater knew of the precise character of the transaction between McKinnie and the officers of the bank, or of the deception practiced by McKinnie and his associates upon the Comptroller of the Currency, by which the latter was induced to believe that the whole of the $300,-000 of increased capital stock had been subscribed and paid for. The contention of the defendant in error, however, is that the jury was justified in inferring from the testimony of McKinnie and Westwater himself and certain facts in the case, that he, Westwater, was aware of the character of the transaction, and thus participated in the fraud practiced by the officers of the bank upon the Comptroller. With this as a question of fact, we have nothing to do, and can only say that the question was properly submitted to the jury by the trial judge.

Whether the note was given for the accommodation of McKinnie or for the accommodation of the bank, would not matter, if, at the time it was given, Westwater was cognizant of the situation between the bank and the Comptroller of the Currency. If, however, it should be determined by the jury that Westwater was innocent of any such

knowledge as he testified that he was, then the sole question remaining would be, whether the note was in fact given for the accommodation of McKinnie or for the accommodation of the bank, and, as was said by this court upon the former writ of error:

"If the accommodation was to McKinnie and his associates, the receiver is entitled to recover, and if to the bank there can be no recovery."

With this statement of the questions of fact to be determined by the jury, it remains to inquire whether there was any error, injurious to the defendant below, in the charge with which the learned trial judge submitted the case to the jury.

Of the nine assignments of error, the ninth and last is for the refusal of the court below to grant the motion of the plaintiff in error for judgment in his favor, non obstante veredicto. After an examination of the testimony as disclosed by the record, we have no difficulty in saying that there is no merit in this assignment, and that the court properly refused the motion.

[2, 3] The first six assignments relate to the refusal of the court to charge the jury as requested and to the court's charging as it did in matters involved in those requests, thus challenging by these assignments the general theory upon which the court submitted the case to the jury, especially as to how the letter from the cashier to Westwater, sent at the instance of McKinnie, was to be regarded. The learned trial judge throughout his charge treated this letter as though it were introduced by the defendant to show that if the note were not given as an accommodation to the bank, but as an accommodation to McKinnie, then the bank, by this paper writing, had released Westwater from the liability he thereby had incurred. In other words, the theory of the charge seems to be that the letter in question is only admissible as evidence of a release by the bank of any liability incurred by Westwater as an accommodation indorser for McKinnie, the absence of guilty knowledge on Westwater's part being, of course, assumed as the basis of any discussion as to his freedom from liability.

In the course of his charge, the learned trial judge uses this language:

"The defendant undertakes to show that that note was merely accommodation for the bank, and that if it were not, if it were not an accommodation for the bank, and that the bank had paid value for it, that then the bank released Mr. Westwater by a paper writing which has been exhibited to you."

We think the learned trial judge was mistaken as to the part played by this letter in the case. It is on this theory, too, that the case was argued by counsel for the defendant in error. If the letter is indeed to be regarded in the light of a release of an existing liability on the part of Westwater, then the contention of the learned counsel for the defendant in error and the position of the learned trial judge is correct, that, in order to be operative as a release, it must be shown to have been authorized by the governing body of the bank, to wit, the board of directors. But, taking this view, that the letter in question has no other relation to the case than as a release of an existing and admitted liability, the learned trial judge does not deny that the

note given by Westwater and delivered to the bank, under the circumstances stated, might be accommodation paper, and that these circumstances, independent of the letter in question, might lead to that conclusion, and we quote from the charge in this connection the following:

"But suppose you should not find that his note was intended by him to be substituted for another note, and to be used as an asset of the bank, included among its assets, you will go further then and determine whether the note that he gave was an accommodation note for the benefit of the bank, or an accommodation note for the benefit of Mr. McKinnie."

We hold now, as we held when this case was formerly before us, that Westwater was an accommodation maker, either for the bank or for McKinnie and his associates, and on the state of the evidence now, as then, this was a question of fact for the jury, whose determination of the same could not be challenged. We think it clear that a bank may hold a note, executed and delivered for its own accommodation, and that the relation between a bank holding such a note and the accommodation maker or indorser is governed by the general law upon that subject, and especially by the well-settled rule that such paper in the hands of the party to whom it is made, or for whose benefit the accommodation is given, is open to the defense of want of consideration, though when taken by third parties in the usual course of business, it is governed by the same rule as other paper. This was the question to be properly submitted to the jury on all the evidence in the case, including the letter in question from the cashier to Westwater. This letter has no relevancy as a release. It clearly was not authorized as such by the governing body of the bank. It was, however, a letter from an active officer accustomed to receive securities for the bank and who, in the case before us, had managed in connection with the president of the bank, on the requirement of the Comptroller of the Currency, the substitution of other paper for the Lyon and McKinnie note. It certainly tended to show (whether it did or not was for the jury to say), in connection with other evidence, that Westwater made his note and delivered it to the bank, through McKinnie, as an accommodation to the bank.

The question here is, not whether the cashier could bind the bank by assuming an obligation on its behalf or perform an act by which the bank incurred a liability without authorization from the board of directors, but whether Westwater did not deliver to the bank the note in question, with the express understanding that it was for the accommodation of the bank, and that he in doing so incurred no other liability than was incident by law to accommodation paper. Why was not the letter of the cashier, or a verbal statement to the same effect made by him to Westwater, relevant evidence as to this understanding on both sides of the transaction? There is no question as to any consideration passing from the bank to Westwater. The bank did not have to take the paper under the conditions, but it did take it and the cashier's letter goes to the jury as evidence for what it is worth of what those conditions were. It is not denied that the bank received the note thus delivered and had the benefit of it in the way and for

the purpose it had in view. Such a letter from the cashier, who received the paper and transacted the business with Westwater, did not need the special authorization of the board of directors in order to make it relevant as an acknowledgment of the nature of the transaction with Westwater. It tends to corroborate Westwater's story of the transaction, which the jury must believe in order to find a verdict in his favor. The correct statement of the issues of fact to be tried by the jury would be, as follows:

(1) Had Westwater any such knowledge of the facts, in regard to the use to which his paper was to be put, as would make him a participant in the deception undoubtedly practiced by the officers of the bank upon the Comptroller of the Currency?

(2) If not, then was the note made by Westwater to the order of Bean given to McKinnie for delivery to the bank for its accommodation, or was it made and given to McKinnie for his (McKinnie's) accommodation?

(3) On this question, the letter of the cashier addressed to Westwater, as promised by McKinnie as a condition for the giving of the note, was admissible for what it was worth, as tending to corroborate Westwater's and McKinnie's testimony, with or without the express authorization of the board of directors.

[4] With this view of the issues properly presented for the determination of the jury, we come to the consideration of what seems to us the serious question raised by the assignments of error. The sixth assignment is as follows:

"The court below erred in refusing to charge the jury as requested in plaintiff in error's seventh point, said point and the court's answer being: 'If you should find that the defendant gave his original note as an accommodation to the bank, and that it was without consideration, then the fact that the directors may not have authorized the giving of the letter of Richardson, cashier, to Westwater is immaterial, and your verdict must be for the defendant.' Answer: 'Refused.'"

It will be observed that this question, in stating the premises for the desired conclusion, does not postulate the innocence of the plaintiff in error as to knowledge of the bank's conduct towards the Comptroller. As we have already remarked, however, the innocence of the defendant in this respect underlies his whole defense and is a necessary postulate to every proposition involving the question of his liability. We think the court should not have unconditionally refused the prayer for instruction thus made, as it could easily have modified its answer by reference to this necessary and underlying condition. We would not predicate error, however, on this refusal, but we are compelled to take notice that the court went further in its general charge and emphasized its refusal of the request just adverted to, by speaking to the jury, as follows:

"If you find, however, that he accommodated the bank and did not know for what purpose his accommodation was to be used, you may find a verdict for the defendant, if you find that the board of directors of that bank, in the manner in which I have explained to you, authorized the making of that contract, as evidenced by that letter."

That there was error in this instruction to the jury must plainly appear from what has already been said in regard to the letter in question. It couples the question as to whether the letter was authorized by the board of directors with the question whether Westwater knew for what purpose his accommodation was to be used, and the jury were instructed that, even if they found that the defendant made the note for the accommodation of the bank, and without knowing for what purpose his accommodation was to be used, still they could not find for the defendant, unless they also found that the letter in question was authorized by the board of directors. This, we think, was tantamount to an instruction to the jury to find for the plaintiff, as there was no evidence of a formal authorization of the letter by the board of directors, and no direct testimony that a majority of the ten directors had individually assented thereto. As we have already said, it was only necessary that a verdict for the defendant should be predicated on the finding that the note was made by the defendant for the accommodation of the bank, without knowledge, guilty or otherwise, of the use to which the note was to be put, whereas a finding that it was made for the accommodation of McKinnie, with or without such knowledge, justified a verdict for the plaintiff. There was evidence tending to support either verdict. The evidence tending to show that the note was given for the accommodation of the bank, rested primarily upon the testimony of McKinnie and the defendant, together with the admitted fact that no consideration was paid by the bank for the note, and that it was accepted and used by the bank for its own purposes. The letter from the cashier of the bank to Westwater tended, as we have said, to corroborate this testimony, and was a link in the chain tending to establish the averment of the affidavit of defense in this regard. If the jury believed Westwater's story, he gave the note to the bank for its accommodation, and it did not matter whether the letter had been written at all, or, if written, it was immaterial whether it was written by any authority other than that of the cashier himself. In fact, the learned judge said at another place in his charge that, if the jury believed the story of Westwater, they might find a verdict in favor of the defendant. We cannot say, however, that this statement would render harmless the error which we still think inheres injuriously in that part of the charge to which we have been adverting.

[5] What we have already said renders it unnecessary to discuss the other assignments of error, and we therefore refrain from doing so, except so far as to say that we think there was error in permitting counsel for the plaintiff, upon cross-examination, to elicit from McKinnie the testimony that he had been previously indicted for an offense that related to the affairs of this bank.

For the reasons stated, therefore, we think the judgment below should be reversed with a venire de novo, and it is so ordered.