## WESTWATER v. MURRAY.

(Circuit Court of Appeals, Sixth Circuit. October 2, 1917.)

No. 3010.

1. JUDGMENT ⬅818(6)—FOREIGN JUDGMENTS—ACTION ON—INQUIRY INTO JURISDICTION.

In an action to recover upon a judgment rendered by a court of another state, inquiry may be made into the court's jurisdiction over the person of the defendant; but such inquiry involves all the usual tests for determining such jurisdiction.

2. COMPROMISE AND SETTLEMENT ⬅20(2) — PERFORMANCE OR BREACH OF AGREEMENT.

An action by the receiver of a national bank was settled by a cash payment and the execution of a cognovit note for $3,000, under an agreement that, if defendant failed to make the payments called for, the receiver might forfeit the first payment and prosecute the original suit to final judgment, but that, if both payments were made, he should apply to the court for ratification and approval of the settlement, and, if approved, have the case marked "Settled and discontinued," or, if not approved, refund the money paid. *Held* that where defendant did not pay the note, it was not a violation of the agreement for the receiver to secure the court's approval of the settlement and have judgment entered on the note.

3. JUDGMENT ⬅817—FOREIGN JUDGMENTS—FULL FAITH AND CREDIT—PUBLIC POLICY.

An Ohio court will enforce, and under the full faith and credit clause of the federal Constitution must enforce, a judgment rendered in Pennsylvania on a cognovit note made and payable in Pennsylvania, though the note contained a provision for an attorney's fee, and though such fee is included in the judgment; such a provision being valid in Pennsylvania, though against public policy in Ohio.

4. BILLS AND NOTES ⬅113—DEFENSES—LACHES IN PRESENTING DEFENSE.

Defendant was sued in Pennsylvania by the receiver of a national bank; the petition setting out what purported to be a complete copy of the note sued on. Defendant filed pleadings in effect admitting the genuineness of the note. The case was twice tried, and twice passed on by the

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

court on appeal, and defendant testified at each trial without raising any question or claim of forgery. After the case was sent back for a third trial, it was settled by the execution of a cognovit note, on which judgment was entered nearly a year later. When sued on such judgment in Ohio, defendant for the first time, nearly seven years after the claimed execution of the note, alleged that it was a forgery, claiming that he executed a note of a different date, that a number of other notes were forged, and that he believed that the note sued on was the genuine note. *Held,* that this defense was barred by laches; no excuse being given for defendant's obvious negligence in not discovering the alleged forgery.

5. JUDGMENT ⟨key⟩822(3)—FOREIGN JUDGMENT—MATTERS CONCLUDED.
  The judgment rendered upon the cognovit note by a court having jurisdiction was conclusive on the issue of forgery, in view of defendant's laches.

6. PLEADING ⟨key⟩214(7)—ADMISSIONS BY DEMURRER—FACTS NOT WELL PLEADED.
  Fraud in obtaining the judgment on the cognovit note was not well pleaded, so as to be admitted by demurrer, where there was no allegation that the receiver had the slightest knowledge of the charge of forgery, or that he resorted to any deception or other act inconsistent with fair dealing.

7. ABATEMENT AND REVIVAL ⟨key⟩41—TRANSFER OF JUDGMENT SUED ON.
  Under Gen. Code Ohio, § 11261, providing, relative to the abatement of actions, that on any transfer of interest, other than those specified therein, the action may be continued in the name of the original party, or the court may allow the transferee to be substituted, an action on a judgment did not abate because of a sale and transfer of the judgment during the pendency of the action.

8. APPEAL AND ERROR ⟨key⟩1041(3)—PLEADING ⟨key⟩236(6)—AMENDMENTS—DISCRETION OF COURT—HARMLESS ERROR.
  In an action on a judgment on a note given in settlement of an action on a larger note, the refusal to permit an amendment to the answer and cross-petition, to allege that the original note had not been returned to defendant, was at most harmless error, and was within the discretion of the court.

In Error to the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Action by Charles C. Murray, receiver of the Cosmopolitan National Bank of Pittsburg, against James Westwater. Judgment for plaintiff, and defendant brings error. Modified and affirmed.

Murray Seasongood, of Cincinnati, Ohio, and Smith W. Bennett and J. G. Westwater, both of Columbus, Ohio, for plaintiff in error.

L. F. Sater and Vorys, Sater, Seymour & Pease, all of Columbus, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This was an action to recover upon a judgment rendered by the District Court of the United States for the Western District of Pennsylvania in a suit commenced January 2, 1909, wherein Robert Lyons, as receiver of the Cosmopolitan National Bank of Pittsburg, Pa., was plaintiff, and James Westwater defendant. That suit was brought upon a promissory note executed in Pittsburg, June 15, 1908, payable to the order of H. R. Bean, for $37,500, at the Cosmopolitan National Bank, signed by James West-

water and indorsed in blank by Bean. Among the defenses set up by Westwater was that the note was a renewal of another one made by him "as an accommodation note" for the bank. A directed verdict was entered in favor of defendant. Lyons v. Westwater (C. C.) 173 Fed. 111, 114. On writ of error the judgment was reversed, and the record remanded, with instructions to award a venire de novo. Lyons v. Westwater, 181 Fed. 684, 104 C. C. A. 663 (C. C. A. 3). The second trial resulted in a verdict and judgment in favor of the receiver for $43,425. This judgment was also reversed with a venire de novo. Westwater v. Lyons, 193 Fed. 817, 818, 824, 113 C. C. A. 617 (C. C. A. 3). The issues and the facts developed on such hearings are sufficiently shown in the citations just made.

On June 20, 1912, shortly after the last-cited decision was rendered, an agreement under seal was executed in Pittsburg by the receiver of the bank and Westwater, in which Westwater agreed to pay the receiver $4,500 "in compromise and settlement" of the original suit, payable $1,500 on or before June 24, 1912, and $3,000 in four months from that date, with interest; the last payment being represented by a cognovit note likewise executed in Pittsburg on the same date, payable to the order of the receiver, and signed and sealed by Westwater. The agreement contained another provision to which allusion will be made later.

Meanwhile Charles C. Murray had been appointed and qualified as the successor of Lyons in the bank receivership, and, under an order of the court in which the original suit was pending, had been substituted as plaintiff in the place of Lyons; accordingly Murray signed this compromise agreement, and the cognovit note was made payable to his order. Westwater paid the $1,500, but failed to meet the note. Afterwards, on April 4, 1913, the receiver by his counsel gave written notice to Westwater, through the latter's counsel, that the plaintiff (the receiver in the original action) had presented a petition to the court praying for approval of the compromise agreement and for judgment against Westwater for the balance due under the agreement, $3,000, with interest from June 20, 1912, and also for an attorney's commission of ten per cent. and costs; that the court had thereupon granted a rule on Westwater, returnable April 18, 1913, to show cause why the prayer of the petition should not be granted and judgment entered against him. April 4th, service of this notice was accepted by Westwater's counsel; and on the 25th of the month action was taken on the rule so granted, the court finding that the rule had been "duly served upon counsel for" Westwater, "and no answer having been filed by" him "or cause shown why the prayer of said petition (for approval of the compromise agreement, etc., as stated) should not be granted, on motion of * * * attorney for plaintiff, the prayer of said petition is granted"; whereupon the court entered an order approving and ratifying the agreement and also rendering judgment in favor of the receiver and against Westwater for $3,467.20, which included accrued interest, $152, and an attorney's commission, $315.20. This is the judgment upon which the present action is based; and an authenticated transcript of the proceedings had in the court rendering the judgment is attached as an exhibit to the petition in the

action below. On June 29, 1916, recovery was allowed below for the full amount of the judgment sued on, with interest; reversal is sought under the present writ of error.

[1, 2] 1. A general demurrer to the petition was interposed in the court below and overruled. Westwater thereupon filed an answer and cross-petition admitting in the first defense the appointment of a receiver of the Cosmopolitan National Bank and the bringing of the original action by the receiver in the federal court of Pennsylvania, but alleging that the judgment herein sued on was rendered by that court upon a cognovit note, and that no notice of the judgment was given to Westwater and no appearance made by him or by his counsel when the judgment was rendered; and still another defense was set up and also made the subject of the cross-petition. To this pleading the defendant in error filed a demurrer, which was sustained. Assignments of error are made to the rulings upon the two demurrers; and it is contended that these rulings present an important question: Whether the District Court of Pennsylvania had jurisdiction to enter the judgment sued on herein. While it does not appear that any such question was raised in the court below, we are disposed to consider the matter. It is of course a general rule that in an action to recover upon a judgment rendered by a court of another state, inquiry may be made into the jurisdiction of the court over the person of the defendant against whom the judgment was rendered; but such an inquiry involves all the usual tests for determining such jurisdiction. Chicago Life Ins. Co. v. Cherry, 244 U. S. 25, 29, 37 Sup. Ct. 492, 61 L. Ed. 966. Here Westwater was already a party to the suit in which the judgment was rendered. He had become a party to that suit upon service of summons accepted for him by the same attorney who accepted service of notice of the fact that in that suit a petition had been presented to the court praying for approval of the compromise agreement and for judgment on the note given by Westwater to carry out such compromise and settlement, as already stated; he had empowered any attorney and of course his own attorney to appear for him and to confess judgment against him on the note, and this seemingly was done to put an end to the suit which had been tried four times—twice in the court of first instance and twice in the Circuit Court of Appeals. It is said, however, that the ultimate action so taken was in violation of the compromise agreement. The agreement in substance gave to the receiver the right of election, in effect an option, to treat the compromise agreement as null and void and to forfeit the first payment made under it in case Westwater failed to meet both the payments called for, and then to prosecute the original suit to final judgment. True, in case both payments were made the receiver was required to apply to the court for ratification and approval of the agreement and, if approved, to have the case marked "Settled and discontinued," or, if not approved, to refund any money paid; but there was nothing in terms to prevent him from taking the course here complained of. Surely it was not to violate any provision of the agreement to apply for its ratification and approval upon Westwater's failure to pay the note for $3,000; and it was simply to surrender a privilege of the receiver when he chose to waive forfeiture of Westwater's payment of $1,500 and to rely on the enforcement of

the unpaid note; in other words, instead of resuming the litigation upon the old note for $37,500, the receiver sought the court's approval of the compromise and settlement of the suit and the enforcement of Westwater's promise to pay the $3,000. Stated in still another way, the receiver had the right under the compromise agreement either to treat it as void or to enforce its performance; no other inference can fairly be drawn from the right of election vested in the receiver by the agreement. Further, it is not alleged or claimed that Westwater ever revoked the power he had given to his attorney, as well as any other attorney, to appear for him and confess judgment upon the note; and it is not perceived how Westwater can question the course in fact taken by the attorney any more than he could be heard to say that the attorney exceeded his power in accepting service of summons in the original suit. Still further, the court's approval of the compromise agreement and allowance of the judgment entered in pursuance of it would seem to have been a proper step in the original suit and, sanctioned as it seems to have been by Westwater's attorney in that suit, was a proceeding of which Westwater cannot rightfully complain. Eden v. Naish, 7 Ch. D. 781, 782, 786; Ward v. Wilson, 92 Tex. 22, 27, 45 S. W. 8; Smythe v. Smythe, 18 Q. B. D. 544, 546. The objection then to the jurisdiction of the District Court of Pennsylvania must fail.

[3] 2. Another objection is urged under one of the assignments of error concerning a matter which does not appear to have been presented in the court below, and as to which no exception was specifically reserved. It is contended that the provision made in the cognovit note for allowance of an attorney's fee is contrary to public policy and void. As respects the state of Ohio, this would be true if the note had been purely an Ohio contract (Miller v. Kyle, 85 Ohio St. 186, 192, 97 N. E. 372, and citations); but it will be recalled that the note was executed and made payable at Pittsburg, and so was exclusively a Pennsylvania contract. It is a settled rule of judicial decision in Pennsylvania that provision may be made in promissory notes for the payment of reasonable attorney's fees for services required for their collection (McAllister's Appeal, 59 Pa. 204, 206; Imler v. Imler, 94 Pa. 372, 375; Walter v. Dickson, 175 Pa. 204, 207, 34 Atl. 646); though such provisions are enforced only to the extent of allowing reasonable compensation (Scott v. Carl, 24 Pa. Super. Ct. 460, 461, and citations). A contract made in and intended to be performed in accordance with the law of another state will be enforced in Ohio, although it may contain a provision, say for payment of a rate of interest, that is opposed to the law of the state (Scott v. Perlee, 39 Ohio St. 63, 67, 48 Am. Rep. 421; Kilgore v. Dempsey, 25 Ohio St. 413, 18 Am. Rep. 306); the same rule has been applied in respect of a contract exempting a carrier from liability for its own negligence (Knowlton v. Erie Railway Co., 19 Ohio St. 260, 263, 2 Am. Rep. 395), and also as to the fellow-servant doctrine (Alexander v. Pa. Co., 48 Ohio St. 623, 636, 30 N. E. 69); the case of Grover & Baker Machine Co. v. Radcliffe, 137 U. S. 287, 11 Sup. Ct. 92, 34 L. Ed. 670, differs so far in its facts from those of the instant case as to be inapplicable here; and we see no reason why this provision for the attorney's fee should not be enforced in Ohio. Indeed, under the full faith

and credit clause of the federal Constitution, the courts of Ohio would be bound to enforce such a judgment as the one sued on in the court below, in spite of the fact that the provision of the cognovit note for allowance of an attorney's fee is opposed to the declared policy of the state. Fauntleroy v. Lum, 210 U. S. 230, 236, 237, 28 Sup. Ct. 641, 52 L. Ed. 1039; Beal v. Carpenter, 235 Fed. 273, 278, 280, 148 C. C. A. 633 (C. C. A. 8).

[4] 3. The main contention urged in the court below in behalf of Westwater arose upon the receiver's demurrer to the answer and cross-petition. It was in substance alleged in the second defense that fraud was practiced on Westwater in obtaining the judgment sued on herein, in that on February 20, 1907, he gave a note "without consideration and purely for the accommodation" of the Cosmopolitan National Bank for $37,500; that thereafter the note was paid by one McKinnie, who was a director and vice president of the bank; that "thereafter without the authority, direction or consent" of Westwater "some person" to him unknown "forged his name to a number of said notes of like amount, made payable at different dates" to the bank, "the various dates of the execution thereof, and of the times of payment thereof were and are to this defendant unknown." It is further alleged in this defense that the original suit in the District Court of Pennsylvania was based on one of these alleged forged notes and which bore date June 15, 1908; that he (Westwater), believing that this note bore his genuine signature and that it was the note which he had previously executed without consideration and delivered to the bank, made the compromise agreement and gave the cognovit note, upon which the judgment sued on in the court below was based; and that at the time he made the settlement he did not know that "the note upon which said original action was based was a false and forged instrument," but that after the judgment sued on herein had been entered, and "having discovered the facts," he notified the receiver that the note sued on in the original action had been forged. This defense is made the basis of the cross-petition, and it is there sought to recover the $1,500 payment made under the compromise settlement and, in case of recovery upon the judgment sued on below, also a judgment equal in amount to the one herein sued on and as an equitable set-off thereto.

The learned trial judge distinctly found, and we think rightly, that Westwater was guilty of laches in setting up this defense. Nearly seven years elapsed between the execution of the note and the claim here made that it was a forgery. Many things happened in that period which were calculated to advise Westwater of the forgery, if there was one. He was sued on the note in the federal court of Pennsylvania on January 2, 1909. The petition in that suit set out what purports to be a complete copy of the note, including signature. Westwater caused an original and an amended answer to be filed in the cause, in each of which he in effect admitted the genuineness of the note. He testified at each of the trials in the court of first instance; and, although the docket entries and the pleadings in the original suit appear as an exhibit to the petition in the case below, yet neither this exhibit nor the reports of the decisions of the Circuit Court of Appeals disclose anything like a question or claim of forgery. The vital

question of fact to be determined at the third trial of the case was, as Judge Gray stated, whether Westwater had "any knowledge of the facts in regard to the use to which his paper (the note in suit) was to be put, as would make him a participant in the deception undoubtedly practiced by the officers of the bank upon the Comptroller of the Currency. Westwater v. Lyons, 193 Fed. 823, 113 C. C. A. 617 (C. C. A. 3). The suit stood for trial upon this issue of fact for more than two months, when, on June 20, 1912, the compromise agreement and settlement was made. The case remained in this situation for nearly another year before proceedings were begun to enforce the settlement. It is difficult to conceive of conditions which more certainly than these would occasion unremitting search into the origin of a note that was giving so much trouble; indeed, it almost surpasses belief that both Westwater and his counsel should have suffered the suit to progress for years without discovering the forgery of Westwater's name on the only instrument upon which the suit was founded, if such forgery in truth existed; but while it is true we are considering the answer and cross-petition under the receiver's demurrer, yet we are convinced that the instrument contains no allegations tending to excuse the obvious negligence of Westwater in discovering the alleged forgery. Brown v. County of Buena Vista, 95 U. S. 157, 159, 24 L. Ed. 422; Case of Broderick's Will, 21 Wall. (88 U. S.) 503, 512, 22 L. Ed. 599.

[5] Furthermore, it is to be remembered that the charge of forgery of the note in issue in the original suit is in effect aimed, not only against the cognovit note that was given in settlement of that suit, but also against the judgment rendered upon the cognovit note. We have already overruled the objection made to the jurisdiction of the court rendering that judgment. The charge of forgery then, as well as of fraud in obtaining the judgment, must be tested by the same rules that would be applicable to any properly entered judgment. It is not pretended that Westwater has taken any steps to obtain direct relief in the District Court of Pennsylvania, and, in view of the laches with which he is chargeable as before stated, the judgment must under long-settled rules be regarded as conclusive of the issues here sought to be raised. Thus in Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195, when speaking of the effect of a judgment, Mr. Justice Field said:

"A judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed."

And again, in United States v. Throckmorton, 98 U. S. 61, 68, 25 L. Ed. 93, Mr. Justice Miller, adopting language of Chief Justice Shaw in a case there cited, said:

"The maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible. But where the same matter has been actually tried, or so in issue that it might

have been tried, it is not again admissible; the party is estopped to set up such fraud, because the judgment is the highest evidence, and cannot be contradicted."

See, to same effect, Covington & Cincinnati Bridge Co. v. Sargent, 27 Ohio St. 233, 238; Board of Com'rs v. Platt, 79 Fed. 567, 571, 25 C. C. A. 87 (C. C. A. 8); Rauwolf v. Glass, 184 Pa. 237, 241, 39 Atl. 79; Long v. Bank, 211 Pa. 165, 168, 60 Atl. 556.

[6] It is to be added that so far as the charge of fraud in obtaining the judgment sued on is concerned, there is no allegation that the receiver, the plaintiff in the original suit, had the slightest knowledge of the charge of forgery here in question, or that he resorted to any deception or other act that was inconsistent with fair dealing; in short, this feature of the fraud complained of is lacking in specific statement of facts and so is not well pleaded in the sense that it falls within the admission of the demurrer. Wood v. Carpenter, 101 U. S. 135, 140, 25 L. Ed. 807; Hardt v. Heidweyer, 152 U. S. 547, 559, 14 Sup. Ct. 671, 38 L. Ed. 548.

[7] 4. After judgment of the court below was entered, Westwater moved to set it aside on the ground that on June 20, 1916, the receiver of the bank "publicly sold and set off" the judgment in suit here to one Kirschler, and that on June 23d the District Court in which the original suit was brought entered an order approving and confirming the sale and directing the receiver to assign and transfer the judgment to the purchaser; it is stated on information that the transfer was made on June 26th. The order of sale was made after the opinion of the court below was announced, though six days before the judgment was entered. The motion to set aside the judgment was denied, upon which error is assigned. It is insisted that the transfer operated to abate the suit. We cannot assent to this. Whatever might have been the precise stage of the suit at the time of the transfer, it could have been prosecuted to an end either in the name of the receiver or in that of the purchaser if substitution had been made. Section 11261, O. G. C.; Lowry v. Anderson, 57 Ohio St. 179, 48 N. E. 810; Dundee Mortgage & Trust Investment Co. v. Hughes (C. C.) 89 Fed. 182, 184, per Gilbert, Circuit Judge; Cloquet Lumber Co. v. Burns, 222 Fed. 857, 861, 862, 138 C. C. A. 283 (C. C. A. 8); Standard Bag & Paper Co. v. Cleveland, 25 Ohio Cir. Ct. 380, 386; Ill. Cent. R. Co. v. Turrill, 110 U. S. 301, 304, 4 Sup. Ct. 5, 28 L. Ed. 154. Since the judgment must be affirmed, we are disposed to remand the cause with direction to grant leave, before enforcement of the judgment, upon motion and proper showing of either the purchaser or Westwater to have substitution or other order entered which will fully protect the rights and interests of all parties concerned.

[8] 5. Error is assigned to a refusal of the court below to permit amendment to the answer and cross-petition by alleging that the note for $37,500 upon which the original suit was based has not been returned to Westwater. This at most was harmless error; but we think the matter was clearly within the discretion of the court.

The judgment is affirmed, subject to the modification above stated.