---

NITED STATES v. AMERICAN EXPRESS CO.

SAME v. ADAMS EXPRESS CO.

(District Court, W. D. New York. August 23, 1912.)

Nos. 853, 854.

CARRIERS (§ 24*)—INTERSTATE COMMERCE—DISCRIMINATION—EXPRESS COMPANIES—JOINT-STOCK COMPANY—INDICTMENT—"COMMON CARRIER."

Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379), as amended by the Hepburn Act (Act June 29, 1906, c. 3591, § 1, 34 Stat. 584 [U. S. Comp. St. Supp. 1911, p. 1284]), provides (section 1, par. 1) that it shall apply to any corporation, person or persons, any common carrier or carriers, engaged in transportation of passengers or property from one state or territory to any other state or territory; and paragraph 2 declares that the term "common carrier" shall include express companies and sleeping car companies. *Held* that, where a joint-stock company did a general interstate express business, and had filed a schedule of its rates with the Interstate Commerce Commission, it was a quasi corporation and subject to indictment as a legal entity for discrimination in violation of the act.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 60–66; Dec. Dig. § 24.*

For other definitions, see Words and Phrases, vol. 2, pp. 1313–1319; vol. 8, p. 7607.]

The American Express Company and the Adams Express Company were indicted for violating the interstate commerce act, and they move to quash the indictments. Motion denied.

John Lord O'Brian, U. S. Atty., of Buffalo, N. Y., and Norton, Penney, Spring & Moore, of Buffalo, N. Y. (Porter Norton, of Buffalo, N. Y., John L. Evans, of Philadelphia, Pa., and James O. Moore, of Buffalo, N. Y., of counsel), for Adams Express Co.

Rogers, Locke & Babcock, of Buffalo, N. Y. (Charles B. Sears, of Buffalo, N. Y., of counsel), for American Express Co.

HAZEL, District Judge. These are criminal proceedings, the indictment against the Adams Express Company containing five counts, and the indictment against the American Express Company containing ten counts; each charging the violation of the act to regulate commerce, passed February 4, 1887, and the amendments thereto. The defendants have separately moved, on identical grounds, to quash the said indictments, which allege offenses of the same general character; and, as the arguments thereon were

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

heard together, a single decision applicable to each case will be filed.

The separate indictments allege that the defendants therein named are joint-stock companies, organized and existing under the common law of this state; that the Adams Express Company is a common carrier having legally established tariff rates and charges for transporting cream in cans in shipments from Arcade, in this district, to Atlantic City, Philadelphia, and Baltimore, and that it has knowingly and willfully charged and received a less compensation for transporting cream to the points stated than the rates named in the schedule published and filed by said company in conformity with the act to regulate commerce; that the American Express Company is a common carrier having legally established tariff rates and charges for transporting certain merchandise from Allequippa, Pa., to various other points; and that it has knowingly and willfully charged and received for transporting such merchandise to points stated a greater compensation than the rates named in the schedule published and filed by it in conformity with the act to regulate commerce.

The defendants contend that they are not corporations, but that they are individuals associated in a joint-stock company; and that there is no authority in law for indicting a joint-stock company as a legal entity.

The provisions of the interstate commerce act, as it was amended by the Hepburn act, in so far as material herein (omitting nonessential parts) read as follows:

Section 1, par. 1:

"That the provisions of this act shall apply to any corporation or any person or persons engaged in the transportation of oil or other commodity * * * who shall be considered and held to be common carriers within the meaning and purpose of this act, and to any common carrier or carriers engaged in the transportation of passengers or property * * * from one state or territory * * * to any other state or territory," etc.

Section 1, par. 2:

"The term 'common carrier' as used in this act shall include express companies and sleeping car companies."

Section 6, end of par. 7:

"Whenever the word 'carrier' occurs in this act, it shall be held to mean 'common carrier.'"

Section 10:

"That any common carrier subject to the provisions of this act, or, whenever such common carrier is a corporation, any director or officer thereof, or any receiver, trustee, lessee, agent, or person, acting for or employed by such corporation, company, person, or party, shall willfully do or cause to be done * * * any act, matter, or thing in this act prohibited or declared to be unlawful * * * or shall be guilty of any infraction of this act for which no penalty is otherwise provided, or who shall aid or abet therein, shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof in any District Court of the United States within the jurisdiction of which such offense was committed, be subject to a fine of not to exceed five thousand dollars for each offense."

It will be observed that section 1 in terms provides that the act applies to any corporation, or any person or persons, engaged in transporting property between the states, holding them to be common carriers; and that paragraph 2 of the same section includes express companies and sleeping car companies in the term "common carriers." Prior to such enactment, the act applied to common carriers without the particular inclusion of corporations, and express and sleeping car companies; and section 10 restricted the liability to individual common carriers and to officers, employés, and agents only of corporations. New York Central R. Co. v. United States, 212 U. S. 500, 29 Sup. Ct. 309, 53 L. Ed. 624. In short, under the original act, corporations were immune, and express companies were not specifically included. In this situation, in 1903, the Elkins act clearly and definitely extended the liability to corporations; and subsequently, in 1906, the Hepburn act enlarged and extended the scope of the original act, not only in relation to the nature of the transportation to which it applied, but also, as I think, to liability for infraction of the statute by express companies and sleeping car companies. By this inclusion Congress seems to have recognized the incompleteness of the term "common carriers" and its applicability to express companies. In view of this interpretation, I am of opinion that not only are express companies plainly within the terms of the act and subject to its provisions, but that Congress intended that any such company should also be amenable eo nomine for its infractions of the statute. It is true that Congress omitted to prescribe any specific method of prosecuting such companies to recover prescribed penalties, and the question, one of procedure, is not wholly without its difficulties.

The indictments describe the defendants as joint-stock associations. As such, they have each chosen a distinctive designation, by which they are commonly known in the transaction of the business of common carriers, and under which they have filed with the Interstate Commerce Commission their schedules of tariffs. They manage and conduct the business of transportation by directors and officers, and issue certificates of stock to their shareholders and to themselves. They have the statutory right in this state to sue and be sued practically as legal entities under the names of their president or treasurer; and, unlike in the case of partnerships, the stockholders may hold the association or company liable for damages to them, even though the stockholders, under their terms of organization, remain liable for the debts and obligations of the company. They enjoy perpetuity and succession of membership; and they use a common name in the ownership of property, both real and personal, being constantly given recognition as entities separate and apart from their shareholders.

The contention that their analogy is closer to corporations than to simple partnerships is supported by a number of decisions of the highest court of this state, decisions which are important, in that they construe the law relating to joint-stock companies cre-

ated by the Legislature of this state. Waterbury v. Merchants' Union Express Co., 50 Barb. (N. Y.) 157; Westcott et al. v. Fargo, 61 N. Y. 542, 19 Am. Rep. 300; People v. Wemple, 117 N. Y. 136, 22 N. E. 1046, 6 L. R. A. 303; In re Jones, 172 N. Y. 575, 65 N. E. 570, 60 L. R. A. 476. In Hibbs v. Brown, 190 N. Y. 167, 82 N. E. 1108, a case relating to the negotiability of bonds issued by a joint-stock association, Judge Hiscock, speaking for the Court of Appeals, in an elaborate discussion of the analogies existing between corporations and joint-stock companies, says:

> "Of course, there can be no doubt that a joint-stock association differs from a corporation, or that in its original conception and ultimate analysis it is like a partnership in respect to the individual liability of its members. But, upon the other hand, so many of the attributes and characteristics of a corporation have been impressed upon the modern joint-stock association that, in my opinion, for the purposes of the question now before us, we are amply justified in regarding simply the joint, quasi corporate, entity, and in saying that an obligation issued in its name upon its general credit, and binding all of its assets, complies with the requirements for a negotiable instrument, even though the practically unimportant individual liability of members is excluded."

And in a concurring opinion Judge O'Brien says:

> "A joint-stock company, whatever else may be said about it, is certainly for most, if not all, practical purposes a legal entity, capable in law of acting and assuming legal obligations quite independent of the shareholders. The idea that these companies occupy some undefined and undefinable ground midway between a partnership and a corporation has practically faded away, and cannot be applied to the question with which we are now concerned. * * * It is, I think, very difficult to avoid the conclusion that these companies at this day and in this state possess substantially and practically all the attributes of corporations, and still more difficult to assign any sound reason for any distinction to be made between the negotiable character of the bonds of each, when made payable to bearer. These companies are for all practical purposes quasi corporations, and, it seems to me, are clearly such, so far as concerns the negotiable character of its commercial paper."

In the Supreme Court of the United States, the more recent decisions have not given utterance to such liberal views, and the holding has been that, for the purpose of conferring jurisdiction on grounds of diverse citizenship, joint-stock companies are neither corporations nor citizens. Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426, 32 L. Ed. 800; Great Southern Fire Proof Hotel Co. v. Jones, 177 U. S. 449, 20 Sup. Ct. 690, 44 L. Ed. 842; Taylor v. Weir, 171 Fed. 636, 96 C. C. A. 438. On the other hand, a joint-stock association, organized under the laws of another state than the state in which it conducted its business, has been held by the Supreme Court of the United States, for the purpose of taxation upon premiums of insurance, to be a corporation, and this conclusion was based solely upon the similarity of its powers and faculties to those of corporate entities. Liverpool Insurance Co. v. Massachusetts, 10 Wall. 566, 19 L. Ed. 1029. These decisions, I think, are readily harmonized, in that the former, relating to the jurisdiction of the court, required a strict construction of the statute; while the latter, relating to the imposition of a local tax by a state statute, depended upon a less rigid rule of statutory construction.

Answering the prime question argued at the bar with much ability by counsel on both sides, upon an examination of the authorities cited, I have reached the conclusion that the defendant associations have attributes so closely allied to corporations that they may fairly be designated as quasi corporations, and, in view of the provisions of the interstate commerce act specifically relating to express companies, may be indicted as legal entities. Such companies are the actual parties in interest, and often carry on litigation as entities under their common names, and; indeed, have even been indicted for offenses under such common names, without having raised the objection now insisted upon. Perhaps it would not have been illegal to indict only a few of the shareholders interested in the defendant companies, or, taking the state statute (section 1919 of the Code of Civil Procedure) as a guide, to indict the president or treasurer thereof, on the ground that it would have been impracticable to bring all the shareholders before the court. But there is no legal obligation on this court to adopt the latter course in a criminal case: and, if I am correct in believing that joint-stock associations, created by the laws of this state, are legal entities for all practical purposes, and are not circumscribed by the rules of the common law, then certainly the defendants are the actual parties in interest in this prosecution, and are properly indictable by their common designations. The question presented is, then, one of right, and not of remedy, and the method of procedure is sufficiently implied by the act under consideration as to render it obviously unnecessary that Congress should explicitly state the procedure by which the provisions of the act were to be enforced against express companies. Indeed, as the defendants separately possess the principal attributes of corporations, which·the Legislature alone can bestow, they cannot, on a motion of this character, assert that they are mere partnerships of individuals, and not indictable as entities under the designations by which they are commonly known.

The interstate commerce act is remedial, and courts deem themselves bound to render it effective by enforcing obedience thereto. It certainly could not have been intended by Congress that unincorporated associations, if express companies, should not be 'prosecuted for their violations of the act; and the presumption is fairly warranted, I think, that it was aware that in any state where such companies are indebted for their organization to state statute they are not regarded merely as associations of persons owing their legal rights to the common law or as mere partnerships, but are regarded as having had their scope broadened, and as having become possessed of characteristics which impart to them a legal entity, and hence subject them to indictment as juridical persons for their violations of the statute.

The precise question herein submitted has not heretofore been before the federal courts, save recently in the case of United States v. Adams Express Company, in the Southern district of Ohio (unreported), where it was held that such companies are not indicta-

ble as entities by their common designations for violations of the interstate commerce act. It has been my endeavor to follow this decision reached by a court of co-ordinate jurisdiction; but I am left unpersuaded of the correctness of such ruling.

For the reasons stated, I think the indictments are sufficient in law, and the motions to dismiss are denied.