BEAL et al. v. CARPENTER.

CARPENTER v. BEAL et al.

(Circuit Court of Appeals, Eighth Circuit. August 2, 1916.)

Nos. 4548, 4549.

*(Syllabus by the Court.)*

1. EXECUTION ☞29—PROCESS ☞73—JOINT-STOCK COMPANIES—CERTIFICATES OF SHARES—SUBSTITUTED SERVICE—JURISDICTION AND SALE OF UNDER SUCH SERVICE.

Certificates of shares of the capital stock of a joint-stock association or partnership, the articles of which contain provisions that the capital stock shall be divided into shares of the par value of $100 each, that certificates of shares shall be issued to each partner of the number of shares to which he is entitled, that the certificates and the interests they represent shall be transferable by written assignments on their backs, that they may be levied upon by writs of execution, or other legal process, in the same manner as shares of stock in corporations, and that the purchaser at any sale of shares of a partner under such process, or by virtue of any contract made by the partner, shall be entitled to have issued to him a certificate or certificates of such shares, are valuable personal property, and their presence in a state is sufficient to sustain the jurisdiction of a court of that state to subject the certificates and the interests in the property of the joint-stock association, which they represent, to adjudication and sale upon substituted service on the owner thereof, although he is not a resident of the state, and neither he nor any of the property of the association is within the state.

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 61; Dec. Dig. ☞29; Process, Cent. Dig. § 87; Dec. Dig. ☞73.]

2. JUDGMENT ☞817—CAUSE OF ACTION GOOD IN ONE STATE AND BAD IN ANOTHER—FAITH AND CREDIT DUE JUDGMENT OR DECREE IN THE FORMER STATE IN THE LATTER.

In a suit upon a judgment or decree of another state the same credit, faith, and validity must be given to it by the court in which the suit upon the judgment is brought as would be given to it in the state in which the judgment was rendered; and this, although it is founded upon a contract, transaction or action which, though good in the state in which the judgment or decree was rendered, was and is contrary to the public policy of and forbidden under penalties by the laws of the state in which the suit upon it is brought.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1456, 1457; Dec. Dig. ☞817.]

Reed, District Judge, dissenting in part.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit by Nathaniel L. Carpenter against Joseph T. Beal and another. From the decree, which granted only part of the relief sought, both defendants and plaintiff appeal. Affirmed.

Henry M. Armistead and Ashley Cockrill, both of Little Rock, Ark. (John R. Abney, of New York City, on the brief), for plaintiff.

C. C. Reid and J. M. Moore, both of Little Rock, Ark., for defendants.

Before SANBORN, Circuit Judge, and REED and BOOTH, District Judges.

SANBORN, Circuit Judge. This is an appeal from a decree against Beal, McDonnell & Co., a joint-stock association or partnership, and their members, to the effect that they transfer two certificates or shares of the capital stock of the company from J. S. McDonnell, the former owner, and issue certificates thereof to Nathaniel L. Carpenter, the plaintiff below. The reasons urged by the defendants below for the reversal of this decree are: First, that the Supreme Court of the state of New York acquired no jurisdiction by substituted service to render the decree of foreclosure of the pledge by McDonnell, and of the sale of these certificates of shares under which Carpenter claims title; and, second, that the decree of the New York court was not enforceable in the state of Arkansas, because the debt, to secure which the pledge on which it was founded was made, although valid and actionable in New York, was illegal and void in the state of Arkansas, because it arose out of transactions and contracts forbidden by the laws of Arkansas for the sale of cotton futures, which the parties intended to settle according to the differences between the contract and the market prices without the delivery or receipt of any cotton whatever.

[1] It was indispensable to the acquisition by the New York court by substituted service on McDonnell of jurisdiction to decree the foreclosure of his pledge and the sale of his pledged certificates that those certificates should constitute property having a situs in the state of New York, and the contention on which the first ground for the reversal of the decree rests is that they were not property, but were, like deeds of land, mere evidences of title to the interest of McDonnell in the property of the association. But certificates of shares of stock in a corporation are not only evidences of interests in the property of the corporation, but representatives of those interests having a situs wherever they are present to such an extent that they are property of value which will sustain the jurisdiction of a court to decree the sale and transfer of both the certificates and the interests they represent by its judgment or decree founded on substituted service upon the owner, although he is not a resident of the state in which the judgment or decree is rendered, and neither he nor any of the property of the corporation is present within its jurisdiction. Merritt v. American Steel Barge Co., 79 Fed. 228, 231, 24 C. C. A. 530; Blake v. Foreman Bros. Banking Co. (D. C.) 218 Fed. 264, 266. Why are not certificates of shares of the capital of a joint-stock association in the same class? A joint-stock association is a partnership, but the members of such an association are free to make and to estop themselves from denying every lawful contract regarding their interests in the partnership property, regarding the representation of those interests by certificates of shares in the company and regarding the pledge, levy upon, transfer, and sale of such interests by means of the pledge, levy upon, sale, and transfer of the certificates evidencing and representing them.

The members of this joint-stock association, by virtue of the articles of partnership, made with each other and with the association these agreements: That the capital of the firm should be $300,000, divided into 3,000 shares, of the par value of $100 each; that the business of the firm should be managed by an executive committee chosen by

the shareholders, who should ordain and establish all by-laws and regulations necessary to the management of their business; that the shareholders should also elect a president, first, second and third vice presidents, a secretary and treasurer; that there should be issued by the president and secretary, under the seal of the firm, certificates to each partner showing the number of shares he is entitled to, "which certificates and the interests they represent shall be transferable by assignment in writing upon the certificate and surrender of the same to the secretary of the firm, whereupon he shall issue a new certificate or certificates to the transferee," and "the transferee shall be entitled to all the rights and privileges of an original purchaser"; that the secretary shall keep a certificate book and register, and register the issuance and transfer of the certificates, and that none but those appearing by his record to be holders of certificates shall be entitled to dividends or to vote at any meeting of the members of the firm; that the certificates shall provide (and they did provide) that by accepting the certificates the persons to whom they should be issued respectively should become, as would also any who should become transferees or lawful holders thereof, parties to the articles of partnership, that the certificates might be transferred by assignment on the back and a surrender thereof to the secretary, and the obtaining of new certificates from the firm in the names of the respective transferees.

The articles of partnership also contained contracts that the death of any member of the firm should not dissolve the firm, or have any effect upon it, or its operations, or mode of business, except that the person or persons who should become the owner or owners of the interest of the decedent should succeed to his interest, and upon surrender of his certificate should receive a new certificate or certificates for the respective interests owned by the decedent; that the death of a member of the firm should not entitle the legal representatives to an accounting, or to any action in the courts or otherwise against the firm; that the owner of certificates "shall have the right to transfer, sell, or hypothecate the same without the consent of the other owners of certificates, or the officers or executive committee of the company"; that "the certificates may be levied upon by writs of execution, or other legal process, in the same manner as shares of stock in corporations may be levied upon in the state of Arkansas, and the purchaser at such sale of the shares of a partner in said business, or at any sale in pais by virtue of any contract made by the partner, shall be entitled to have issued to him upon producing proper authority of his accession to the shares of the partner in said firm, a certificate or certificates of such shares, and shall thereupon become in all respects subject to the terms and provisions of these articles."

The presence of certificates of the shares of a corporation in one state when all its property is in another is sufficient to sustain the jurisdiction of the courts of the former state to subject the certificates and the interests in the property of the corporation which such certificates represent to adjudication and sale by the courts of the former state on substituted service upon the owner of the certificates, because the certificates not only evidence, but also represent, the interests of their owner in the property of the corporation, because they are bought

and sold as chattels, and because they may be hypothecated and sold, have an inherent market value, and are generally classified as personal property. Cowles Electric Smelting & Aluminum Co. v. Lowrey, 79 Fed. 335, 24 C. C. A. 616. But there are none of these attributes of certificates of stock in corporations which the members of this joint-stock association have not by their partnership agreement given to the certificates of shares in their company. These certificates evidence and represent the interests of their owners in the property of the joint-stock association as completely as certificates of shares of stock in a corporation represent the interests of their owners in its property. The members of this association have expressly covenanted with each other and with the association in their articles of partnership that the "certificates and the interests they represent shall be transferable by assignment in writing upon the certificate," that they may be levied upon by writs of execution or other legal process in the same manner as shares of stock in corporations, "and that the purchasers under sales made under such legal process on surrender of the certificates sold shall be entitled to a transfer of the shares sold and to new certificates of the shares to themselves.". By these covenants the association and the members are alike estopped from maintaining that the certificates do not represent the interests of their holders in the partnership property, or that the transfer of the certificates by the assignments of the holders, or by a levy upon or sale thereof under a lawful order or decree of court, does not convey those interests.

Certificates of joint-stock associations are bought and sold as chattels, they may be hypothecated and sold, they have an inherent market value, and they are generally classified as personal property. They have every attribute that renders certificates of shares in a corporation either representative of the interests of their holders in the property of the corporation or transferable by assignment, or by legal proceedings, or valuable, or leviable, or adjudicable, and they therefore constitute personal property, valuable in proportion to the value of the property of the joint-stock association they represent, whose presence in any state is sufficient to sustain the jurisdiction of a court to adjudicate and sell the interest of the owner thereof therein and in the property of the partnership they represent on substituted service upon him, although all the property of the association is situated and the owner of the certificates resides and is present in another state. In re Jones' Estate, 172 N. Y. 575, 65 N. E. 570, 573, 60 L. R. A. 476; Rice v. Rockefeller, 134 N. Y. 174, 179, 180, 181, 31 N. E. 907, 17 L. R. A. 237, 30 Am. St. Rep. 658.

Joint-stock associations, the interests of whose members are represented by certificates of their shares, transferable with the interests they represent by private and judicial assignment of the certificates, are valid at common law, and as there is no statute of Arkansas prohibiting or denouncing them they are valid in that state. Walburn v. Ingilby, 1 Myl. & K. 61, 76; Merchants' National Bank v. Wehrmann, 202 U. S. 295, 300, 301, 26 Sup. Ct. 613, 50 L. Ed. 1036; Re Mexican & South American Co., 27 Beavan's Reports, 474, 481, 482; Phillips v. Blatchford, 137 Mass. 510, 512; United States v. American Express Co. (D. C.) 199 Fed. 321, 323, 324, and cases there cited. Their analo-

gy to corporations is much closer than to ordinary partnerships. Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566, 19 L. Ed. 1029; Hibbs v. Brown, 190 N. Y. 167, 82 N. E. 1108.

Our conclusion has not been reached without a thoughtful consideration of the argument of counsel for the appellants to the contrary, based on the facts that a corporation holds the title to its property and the shareholders have no title thereto, while the title to the property of a partnership is in the partners, and that, in the absence of such agreements as have been found in the articles of partnership in this case, a levy may be made on the interest of a partner by levying on the property of the partnership, while a levy on the interest of a shareholder of a corporation is not effected by a levy upon the property of the corporation. But the representative character of the certificates of shares and the effect of their transfer by private assignment or judicial decree is conditioned, not by the nature or extent of the interest represented by them, but by the agreement of the owner thereof with those interested with him in the partnership and with the partnership itself, and all the owners of all the certificates of the shares in this joint-stock association, and the association itself, have contracted that the certificates of the shares shall represent the respective interests of the owners thereof in the property of the association, that the certificates and the interest in the property they respectively represent shall be transferable by private assignment and by judicial assignment of the certificates under legal process, and they are all estopped by these contracts from maintaining that these certificates were not valuable personal property, or that the rights in them and in the property they represent were not judicable and transferable by the decree of the court in New York within whose territorial jurisdiction the certificates were present.

It is not necessary to consider or decide whether or not a levy of an execution, or a writ of attachment, in Arkansas upon the interest of McDonnell in the property of the association in that state could lawfully be made, for none has been made, and, if it could be, and if it had been, it would be subject and subordinate to the contracts which have been recited in regard to the representative character of the certificates and the transferability of them, and of the interests they represent, by private or judicial assignment of the certificates.

Authorities to the effect that the individual interest in the property of a partnership the articles of which contain no such contracts as those which have been recited from the articles of this association regarding the certificates of shares, their representative character, and their transferability, may be levied upon in the state where the property is situated, such as Claggett v. Kilbourne, 1 Black (66 U. S.) 346, 17 L. Ed. 213, Jones, McDowell & Co. v. Fletcher, 42 Ark. 422, 448, 453, and Atkins v. Saxton, 77 N. Y. 195, 199, are aside the question which this case presents, because such partnerships lack the attributes of corporations, the certificates of shares, and the contracts concerning their transferability and its effect, which determine that issue in this case. Nor are the cases relative to the proper places of administration of the interests of deceased holders of stock in cor-

porations, such as Kennedy v. Hodges, 215 Mass. 112, 102 N. E. 432, nor those relative to the situs for taxation of such interests, or of the interests of holders of certificates of shares in joint stock associations, such as Peabody v. Stevens, 215 Mass. 129, 102 N. E. 435, and People ex rel. Winchester v. Coleman, 133 N. Y. 279, 283, 284, 31 N. E. 96, 16 L. R. A. 183; so relevant, consistent, or persuasive as to convince that the decision of the question in hand which was reached by the Supreme Court of New York, by the court below, and which has now been reached by this court, is erroneous, or to overcome or disturb the force of the reasons which have been stated for our decision. We turn to the second question.

[2] After the decree of foreclosure of the pledge of McDonnell's certificates, and their sale and conveyance to the plaintiff Carpenter under the decree, had been proved in the trial of the case below, the court rejected an offer of the defendants to prove that McDonnell's debt secured by his pledge arose out of his failure to cover margins on cotton, which, by means of telegrams sent from Arkansas to New York City, he ordered Carpenter to sell in that city for future delivery, cotton none of which they ever intended to deliver, and none of which they ever delivered. This ruling of the court is assigned as error, and it is contended that the decree and the judicial sale in New York are ineffective and void in Arkansas, because the transactions upon which they rest were violative of the public policy and the laws of that state. Supplement to Kirby's Digest Statutes of Arkansas 1911, §§ 1753b, 1753c. But the contracts of sale were made and were to be performed in New York, and they were valid and actionable there. The orders of McDonnell to Carpenter in New York to make the sales for him in that city, and Carpenter's acceptance and execution thereof in that city, constituted a contract, or many contracts, made in New York, that McDonnell would pay him for the money he advanced and the services rendered in executing his orders. McDonnell's pledge of his certificates of his shares to Carpenter to secure his debt, and Carpenter's acceptance thereof, was a contract made in New York, and by the laws of that state all these contracts were legal and valid. Wilhite v. Houston, 200 Fed. 390, 391, 393, 118 C. C. A. 542, 543, 544; Berry v. Chase, 77 C. C. A. 161, 146 Fed. 625; Edwards Brokerage Co. v. Stevenson, 160 Mo. 516, 61 S. W. 617; Bibb v. Allen, 149 U. S. 481, 489, 13 Sup. Ct. 950, 37 L. Ed. 819. The decree of foreclosure of the lien of the pledge and of the sale and conveyance of the certificates and of the interest they represented was rightly rendered and executed in accordance with the laws of that state.

It is certain that the plea that the contracts and transactions out of which the debt and pledge of McDonnell arose were prohibited and denounced under prescribed penalties by the laws of Arkansas would have been no defense to a suit in the state of New York upon the decree, or upon the sale and title thereunder. And the Constitution, the acts of Congress, and the law of the land repeatedly declared by the Supreme Court are:

"That the judgment of a state court should have the same credit, validity, and effect in every other court in the United States which it had in the state

where it was pronounced, and that whatever pleas would be good to a suit thereon in such state, and none others, could be pleaded in any other court of the United States." Constitution of United States, art. 4, § 1; Rev. Stat. § 905 (Comp. Stat. 1913, § 1519); Hampton v. McConnel, 3 Wheat. 232, 234, 4 L. Ed. 378; Mills v. Duryee, 7 Cranch, 481, 482, 3 L. Ed. 411; Christmas v. Russell, 5 Wall. (72 U. S.) 290, 300, 301, 302, 18 L. Ed. 475; Fauntleroy v. Lum, 210 U. S. 230, 236, 237, 28 Sup. Ct. 641, 52 L. Ed. 1039; Fall v. Eastin, 215 U. S. 1, 15, 30 Sup. Ct. 3, 54 L. Ed. 65, 23 L. R. A. (N. S.) 924, 17 Ann. Cas. 853; Roller v. Murray, 234 U. S. 738, 743, 744, 745, 34 Sup. Ct. 902, 58 L. Ed. 1570; New York Life Ins. Co. v. Head, 234 U. S. 149, 160, 161, 34 Sup. Ct. 879, 58 L. Ed. 1259.

Counsel seek to avoid the logical and inevitable result in this case from the facts and the law which have been recited, by the argument that the rule quoted is inapplicable to a judgment or decree founded on a cause of action which, though good in the state in which the judgment was rendered, is in conflict with the laws and public policy of the state in which the suit is brought to enforce the judgment, and they cite in support of this position Andrews v. Andrews, 188 U. S. 14, 34, 23 Sup. Ct. 237, 47 L. Ed. 366, and Wisconsin v. Pelican Ins. Co., 127 U. S. 265, 290, 299, 300, 8 Sup. Ct. 1370, 32 L. Ed. 239. But, as was shown by the Supreme Court in Fauntleroy v. Lum, 210 U. S. 236, 237, 28 Sup. Ct. 641, 52 L. Ed. 1039, and by Judge Trieber in his opinion in this case (222 Fed. 453, 455, 458), the decision in Andrews v. Andrews, a divorce case, was that where the jurisdiction of the foreign court rendering the decree was dependent upon the domicile of the parties the court of another state that was asked to give effect to the decree might re-examine that question in order to determine whether or not the court which rendered the decree had jurisdiction so to do, an issue always open in an action to enforce any judgment. The decision in Wisconsin v. Pelican Ins. Co. was that, as the jurisdiction of the Supreme Court over actions by a state is limited to controversies of a civil nature, it may look, for the purpose of determining its jurisdiction, into the nature of the cause of action on which a judgment upon which the state brought an action was founded, to determine whether or not the suit upon this judgment involved a controversy of a civil nature.

Neither of these cases sustains the broad proposition of counsel. On the other hand, after a careful review of the opinions in these two cases and the opinions in Christmas v. Russell and Fauntleroy v. Lum, this court is convinced that in the last two cases the Supreme Court has conclusively determined that in a suit upon a judgment or decree of the court of another state the same credit and effect must be given to it by the court in which the suit upon the judgment or decree is brought as would be given to it in the foreign state, although the judgment or decree is founded upon a contract, or transaction, or action good in the foreign state, but contrary to the public policy of and forbidden under penalties in the state in which the suit upon the judgment is brought.

In Christmas v. Russell, 5 Wall. (72 U. S.) 290, 300, 301, 302, 18 L. Ed. 475, Christmas, a resident and citizen of Mississippi, in 1841 made a promissory note upon which, by a statute of limitations of that state, action was barred in March, 1847. In 1853 he went to

Kentucky on a visit, where a suit was brought against him on his note, in which a judgment against him was rendered in November, 1857, after he had made the defense of the statute of limitations of Mississippi, and after the state of Mississippi in February, 1857, had enacted a statute to the effect that no action should be maintained on any judgment rendered by any court without that state against any person who was or should be a resident of that state at the time of the commencement of the action on which the judgment was or should be rendered in any case in which the cause of such action would have been barred by any act of limitation of that state if such action had been brought therein. An action was brought in Mississippi upon the judgment in Kentucky, and the Supreme Court held that, notwithstanding the facts that the case upon which it was based was not actionable in Mississippi when the action upon it was commenced and rendered in Kentucky, and notwithstanding the fact that its maintenance was contrary to the public policy and the laws of Mississippi, the judgment of Kentucky must receive the same faith and credit and have the same validity in Mississippi that it would have had in Kentucky, and that the plaintiff must have judgment upon it in the state of Mississippi.

In Fauntleroy v. Lum, 210 U. S. 230, 231, 236, 237, 28 Sup. Ct. 641, 52 L. Ed. 1039, an action was brought in Mississippi on a judgment rendered in a court of Missouri upon an award of arbitrators made in Mississippi upon a cause of action which arose out of contracts made in gambling transactions in cotton futures. The laws of Mississippi made such contracts and transactions misdemeanors, and provided that they should "not be enforced in any court." The Supreme Court of Mississippi held that the plaintiff could not recover, but the Supreme Court of the United States reversed that decision; held that the judgment in Missouri must be given the same faith, credit and validity in the courts of Mississippi that it would have in Missouri, and that the plaintiff must have judgment upon it in Mississippi, although the laws and public policy of that state prohibited the contracts and transactions on which it was based, made them misdemeanors, and forbade any action upon them.

Counsel argue that this opinion and decision is not conclusive of the question under consideration in this case, because there was an award of arbitrators between the original cause of action and the Missouri judgment. But if in the courts of Missouri a judgment based upon an award which was based on gambling contracts and transactions was not actionable in the courts of Missouri, as the Supreme Court of that state held before it was reversed, then it is certain that an action upon a simple award of arbitrators based on such contracts and transactions was not actionable, and the Supreme Court was necessarily called upon to determine and it did decide the very question in this case, that it was no defense to a suit on a judgment or decree of a court of another state that, although the cause of action on which the judgment was founded was good in the latter state, it was prohibited under penalties by the laws and against the public policy of the former state. This view of the decision in Fauntleroy v. Lum is confirmed by the fact that the Supreme Court stated in its opinion that this was the

question it was considering and deciding. After discussing the jurisdiction of the Mississippi court, it stated the question it then entered upon, considered and decided in these words:

"We regard the question [the question of the jurisdiction of the Mississippi court] as open under the decisions below, and we have expressed our opinion upon it independent of the effect of the judgment, although it might be even if jurisdiction of the original cause of action was withdrawn, it remained with regard to a suit upon a judgment based upon an award whether the judgment or award was conclusive or not. But it might be held that the law as to jurisdiction in one case," where the judgment or award was conclusive, "followed the law in the other," where the judgment or award was not conclusive, "and therefore we proceed at once to the further question whether the illegality of the original cause of action in Mississippi can be relied upon as a ground for denying a recovery upon a judgment of another state." 210 U. S. 235, 236, 28 Sup. Ct. 641, 52 L. Ed. 1039.

And in Fall v. Eastin, 215 U. S. 1, 15, 30 Sup. Ct. 3, 54 L. Ed. 65, 23 L. R. A. (N. S.) 924, 17 Ann. Cas. 853, Mr. Justice Holmes, who wrote the opinion in Fauntleroy v. Lum, speaking of a decree of a court in the state of Washington, and the faith and credit to which it was entitled in the state of Nebraska, cited that case to the proposition that:

"It does not matter to its constitutional effect what the ground of the decree may be, whether a contract or something else."

The plaintiff below, Carpenter, has also appealed from the decree in this case, because the court refused to award to him $1,600, which was declared by the defendants as a dividend on the shares of stock in controversy on February 14, 1914, about four months after the suit in New York was commenced. The decree of foreclosure and sale was rendered on April 4, 1914; notice of sale under the decree was given, dated May 1, 1914; the sale was made May 8, 1914; and on May 20, 1914, the referee who made the sale, executed conveyances to Carpenter of the two certificates in controversy, and of all right, title, and interest in and to the same, and in and to the shares of the capital of Beal, McDonnell & Co. named in the certificates. But no mention was made in the decree, in the notice of sale, in the report of sale, or in either of the conveyances to Carpenter, of the dividend. In view of these facts no error is perceived in the failure of the court below under the New York decree, sale, and conveyances to adjudge the dividend to Carpenter, for this dividend was not advertised for sale, sold, or conveyed to him.

Let the decree below be affirmed, with costs in each case against those who respectively appealed.

REED, District Judge, dissents from the opinion and conclusion in No. 4548, Beal v. Carpenter, but concurs in the result in No. 4549, Carpenter v. Beal.