*1430 OPINION.
Green:
In support of the contention that the Board should reduce the deficiency determined against T. B. Noble for 1919, in an amount equal to the overassessment for 1918, petitioner’s counsel has called attention to our decisions in Appeal of E. J. Barry, 1 B. T. A., 156; Appeal of Hickory Spinning Co., 1 B. T. A. 409; and Appeal of Fort Orange Paper Co., 1 B. T. A. 1230. We have consistently held that we have no authority to prescribe the year or years to which the Commissioner shall apply a credit for an overpayment to .tax for an earlier year not before us. John W. Anderson, 12 B. T. A. 1111.
The respondent has determined that the Marine Oil Co. was a partnership and has included in the income of the taxpayers for the years 1919 and 1920 amounts purporting to be Noble’s distributive share of the income whether or not distributed. The petitioners have raised the question as to whether or not the Marine Oil Co. was in reality a partnership but have made no effort to show the nature of the enterprise. Furthermore, the facts show that the parties in interest referred to the organization as a partnership. Under these circumstances the finding of the respondent with reference to the nature of the organization must stand. But even though the Marine Oil Co. was a partnership and T. B. Noble was at one time a partner, his relation as such ended on February 7, 1919. On that date Noble and certain other members of the firm sold their interests in the enterprise. The language of the agreement of sale is clear and unequivocal. The agreement states that the parties of the first part (T. B. Noble being one of those parties) “ have sold, transferred, assigned and conveyed and do by these presents hereby sell, transfer, assign and convey all their right, title and interest in and to the real and personal property hereinafter described.” This language is followed by a description of all property of whatever kind held by the Marine Oil Co.
Prior to February 7, 1919, Noble was a partner in the Marine Oil Co., and under section 218 of the Revenue Act of 1918, the petitioners are taxable on his distributive share in the profits of that company whether or not distributed, but on that date his relation as a partner ceased and profits subsequently derived from that source were profits from the sale of his interest in the company and should be treated as such. The facts show that the total amount received by Noble from the Marine Oil Co. was his pro rata share of $3,500,000, the value placed on the assets of the company as of February 7, 1919. Noble’s interest in the .enterprise cost him $500, and the basis for determining his gain from the sale is this amount increased by his share of the profits in the period from the date of the partnership’s last *1431 accounting period to the date of the sale. Appeal of Warren E. Brown, 4 B. T. A. 56.
We are of the opinion that the sale, by its terms, constituted a closed transaction in 1919 and that the taxpayers are taxable for that year on the gain derived. Under the provisions of section 212(d) of the Revenue Act of 1926, made retroactive by section 1208 of the same Act, profits derived from the sale of such property where the initial payment does not exceed one-fourth of the purchase price, may be reported in the year in which the payments are actually received. That these provisions are not applicable to this sale is beyond question. Two-sevenths of the purchase price was paid in cash on consummation of the agreement of sale, and another one-seventh was paid by notes redeemable on or before December 24,1919, and as a matter of fact almost two-thirds of the total amount due had been paid before the end of 1919.
It also appears from the facts shown by the record that the claim of the vendors for the sale price was worth face value. There was no contingency set up in the instrument with reference to the price or any other item except that title must be good. This conclusion is also supported by the fact that the initial payments were made as agreed and by the close of 1920 only a small amount, which was paid in 1921, was outstanding. On these facts and in the absence of proof to the contrary we are constrained to hold that the claim of the vendors was worth face value and the petitioner’s income for 1919 should include as total profit from the sale Noble’s pro rata share of the sale price less $500, increased by his distributive share in the partnership profits up to the date of the sale.
The question as to what share of the profits of T. B. Noble & Co. is taxable to the petitioners is answered in our decision in Appeal of Ormsby McKnight Mitchel, 1 B. T. A. 143. So far as T. B. Noble & Co. and the public were concerned, Noble was the owner of a one-twelfth interest in the partnership and, even though he entered into an agreement with certain individuals whereby they paid to him a proportionate part of the cost of his interest in the partnership and were to receive a like share in the profits, these transactions were purely personal between Noble and such individuals and had no bearing on the organization or conduct of business of T. B. Noble & Co. At the most, the agreement resulted in the formation of a subpartnership for the division of Noble’s share of the partnership profits. The fact that some or all of the partners in T. B. Noble & Co. Imew of the arrangement between Noble and his friends and business associates is of no consequence. These individuals had no connection with the partnership nor the partnership with them. As was clearly shown in our decision in Appeal of Ormsby McKnight *1432 Mitchel, supra, a partner is taxed under the law on his distributive share of partnership profits whether such profits are distributed or not, and the law is not concerned with his disposition of such profits subsequent to the accrual or receipt thereof.
The remaining question in this appeal may well be divided into two parts. First, was the transaction wherein T. B. Noble & Co. exchanged property in the form of an oil and gas lease for stock of the Fisher-Whaley Oil Co. such transaction as would result in taxable gain or deductible loss to these taxpayers? Second, the amount of taxable gain or deductible loss, if either resulted.
Several salient facts should be stated in order that the fact basis of the question be clearly apparent. T. B. Noble & Co. was a partnership. The petitioner T. B. Noble was a member of the partnership. The partnership organized the Fisher-Whaley Oil Co. under the laws of Texas and conveyed to it a certain oil and gas lease in exchange for one-half of its authorized capital stock. A portion of the remainder of the authorized stock was subsequently sold. The Fisher-Whaley Oil Co. was an unincorporated joint-stock association. The. question thus presented is whether a partner derives taxable gain when his partnership exchanges partnership assets for the outstanding stock of a Texas joint-stock association organized by the partnership.
The petitioner admits that the Fisher-Whaley Oil Co. was a joint-stock association and, by virtue of section 1 of the Revenue Act of 1918, taxable as a corporation. See Burk-Waggoner Oil Association v. Hopkins, 269 U. S. 110. He further admits, for purpose of argument, that if the Fisher-Whaley Oil Co. had in fact been a corporation, the transaction would be taxable providing the stock received in exchange was worth more than the cost of the lease exchanged. But it is the petitioner’s contention that the very fact that the Fisher-Whaley Oil Co. was not a corporation and hence could not itself hold the legal title to the lease transferred to its trustees, makes the transaction in question one which does not result in a taxable gain or deductible loss to Noble and his associates. Stated in another way, the petitioner contends that in substance he merely changed his evidence of ownership in the same property and did not exchange property for other property within the purview of section 202(b) of the Revenue Act of 1918, which reads in part as follows:
When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; * * *.
This section of the statute has been before us many times. See Appeal of E. C. Huffman, 1 B. T. A. 52; Appeal of A. J. Siegel, 4 *1433 B. T. A. 186; and Appeal of Napoleon B. Burge, 4 B. T. A. 732, citing Weiss v. Stearn, 265 U. S. 242; Marr v. United States, 268 U. S. 536; and other cases. See also George A. Ricker v. Commissioner, 10 B. T. A. 11. In the Burge case, several individuals acquired, subsequent to March 1, 1913, undivided interests in certain oil leases which, after the leases had appreciated in value, they transferred to a corporation in exchange for substantially all the latter’s capital stock. In determining whether the transaction was taxable, we, in the course of the opinion, said:
The true test is laid down in Weiss v. Stearn, 265 U. S. 242, where the court says, at page 254, that, if a stockholder is to be taxed on an exchange of property the transaction must be “ something which gives the stockholder something really different from what he theretofore had.” This test, when applied here, gives the real solution to the question. The taxpayers, prior to the exchange, had the direct ownership, hence complete and full control, over their interests in the leases; after the exchange they W'ere at most beneficial owners of the assets of the corporation, their shares therein being evidenced by stock certificates which carried with them no direct right of ownership in the assets. Appeal of E. C. Huffman, 1 B. T. A. 52, and casesi therein cited. In other words, by this transaction the taxpayers received shares of stock which were property of a distinctly different kind from, and having entirely different attributes than, the property paid in by them.
We think that the test to be applied in this case is whether the petitioner, as a partner in the T. B. Noble & Co. partnership, received property of a distinctly different kind from, and having entirely different attributes than, his interest in the lease paid in by the partnership in exchange for half of the shares of the capital stock of the Fisher-Whaley Oil Co. Shares of stock in a joint-stock association are property. In re Pittsburg Wagon Works' Estate, 204 Pa. 432; 54 Atl. 316; Beal v. Carpenter (C. C. A., 8th Cir.) 235 Fed. 273. In the former case, the Supreme Court of Pennsylvania held that a share of stock in a joint-stock association was personal property even though the assets of the joint-stock association consisted of real estate held by a trustee. The court said in part:
As we have seen, they require the title of the association’s property to be in the name of the trustee, and not in the names of the individual members. The interest of any member is determined by the number of shares he holds in the capital stock of the company. He could only dispose of his interest by transferring on the books of the company, in the presence of the president or secretary, his shares of stock to the purchaser, who should “thereby as to such share or shares succeed and become subject to all the rights and obligations of an original party thereto.” Such was the nature and character of the interest of W. J. Kountz in the Pittsburg Wagon Works Association in November, 1883, and it is clear that it was not subject to levy and sale as real estate.
In Beal v. Carpenter, supra, there was involved the effect to be attributed to a decree of foreclosure and sale by a court of New York *1434 of certificates of shares in an Arkansas joint-stock association, which shares had been pledged in New York but the property of which association was located in Arkansas. The pledgor contended that the decree of the New York court was void because the court acquired no jurisdiction of the res. A part of the court’s opinion follows:
It was indispensable to the acquisition by the New York court by substituted service on McDonnell of jurisdiction to decree the foreclosure of his pledge and the sale of his pledged certificates that those certificates should constitute property having a situs in the state of New York, and the contention on which the first ground for the reversal of the decree rests is that they were not property, but were, like deeds of land, mere evidences of title to the interest of McDonnell in the property of the association. But certificates of shares of stock in a corporation are not only evidences of interests in the property of the corporation, but representatives of those interests having a situs wherever they are present to such an extent that they are property of value which will sustain the jurisdiction of a court to decree the sale and transfer of both the certificates and the interests they represent by its judgment or decree founded on substituted service upon the owner, although he is not a resident of the state in which the judgment or decree is rendered, and neither he nor any of the property of the corporation is present within its jurisdiction. Merritt v. American Steel Barge Co., 79 Fed. 228, 231, 24 C. C. A. 530; Blake v. Foreman Bros. Banking Co. (D. C.) 218 Fed. 264, 266. Why are not certificates of shares of the capital of a joint-stock association in the same class? A joint-stock association is a partnership, but the members of such an association are free to make and to estop themselves from denying every lawful contract regarding their interests in' the partnership property, regarding the representation of those interests by certificates of shares in the company and regarding the pledge, levy upon, transfer, and sale of such interests by means of the pledge, levy upon, and transfer of the certificates evidencing and representing them.
After reciting the provisions of the articles of association which are substantially the same in their essential particulars with the articles of association of the Fisher-Whaley Oil Co., the court proceeded:
* * * These certificates evidence and represent the interests of their owners in the property of the joint-stock association as completely as certificates of shares of stock in a corporation represent the interests of their owners in its property. * * *
Certificates of joint-stock associations are bought and sold as chattels, they may be hypothecated and sold, they have an inherent market value, and they are generally classified as personal property. They have every attribute that renders certificates of shares in a corporation either representative of the interests of their holders in the property of the corporation or transferable by assignment, or by legal proceedings, or valuable, or leviable, or adjudicable, and they therefore constitute personal property, valuable in proportion to the value of the property of the joint-stock association they represent, whose presence in any state is sufficient to sustain the jurisdiction of a court to adjudicate and sell the interest of the owner thereof therein and in the property of the partnership they represent on substituted service upon him, although all the property of the association is situated and the owner of the certificates resides and is present in another state. * * *
*1435 Joint-stock associations, the interests of whose members are represented by certificates of their shares, transferable with the interests they represent by private and judicial assignment of the certificates, are valid at common law, * * *. Their analogy to corporations is much closer than to ordinary partnerships, Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566, 19 L. Ed. 1029; Hibbs v. Brown, 190 N. Y. 167, 82 N. E. 1108
Our conclusion has not been reached without a thoughtful consideration of the argument of counsel for the appellants to the contrary, based on the facts that a corporation holds the title to its property and the shareholders have no title thereto, while the title to the property of a partnership is in the partners, and that, in the absence of such agreements as have been found in the articles of partnership in this case, a levy may be made on the interest of a partner by levying on the property of the partnership, while a levy on the interest of a shareholder of a corporation is not effected by a levy upon the property of the corporation. But the representative character of the certificates of shares and the effect of their transfer by private assignment or judicial decree is conditioned, not by the nature or extent of the interests represented by them, but by the agreement of the owner thereof with those interested with him in the partnership and with the partnership itself, and all the owners of all the certificates of the shares in this joint-stock association, and the association itse.f, have contracted that the certificates of the shares shall represent the respective interests of the owners thereof in the property of the association, that the certificates and the interest in the property they respectively represent shall be transferable by private assignment and by judicial assignment of the certificates under legal process, and they are all estopped by these contracts from maintaining that these certificates were not valuable personal property, or that the rights in them and in the property they represent were not judicable and transferable by the decree of the court in New York within whose territorial jurisdiction the certificates were present.
The articles of association of the Fisher-Whaley Oil Co. show that it was organized along corporate lines; that it had stock which was transferable on the books of the association; that it had trustees which corresponded to the directors of a corporation; that it had officers; and that during the years in question it was engaged in the business of drilling for and selling oil and gas. Before the transfer the petitioner and the other partners in the T. B. Noble & Co. partnership owned the full legal and equitable right to the lease in question. After the transfer they owned stock in the Fisher-Whaley Oil Co. In our opinion these shares were in themselves, first, property .and, second, property of a distinctly different kind from and having entirely different attributes than the lease exchanged therefor. The legal title to the lease was held by trustees “ in trust for the owners of beneficial interest in this trust in the proportion which the amount of their interest bears to the total number of interests outstanding ” (¶ XIII of Articles and Declarations). We conclude, therefore, that the transaction was one giving rise to taxable gain or deductible loss under section 202(b), sufra, depending on how the fair market value of the stock received compared with the cost of the lease purchased subsequent to March 1,1913.
*1436 Since the transaction is an exchange, we must determine from the evidence the fair market value of the stock of the Fisher-Whaley Oil Co. on the day of the exchange, namely, May 31, 1919. The partnership purchased the lease in question at public auction just 15 days prior to the date it was transferred to the trustees of the Fisher-Whaley Oil Co. The purchase price was $52,650. The partners received 1,500 shares of the association’s stock, having a par value of $150,000. The respondent determined that the partners profited by the difference, or $97,350. Shortly after the association was organized some of the stock was sold at par, but how much stock was sold, when it was sold, or what events happened between the date of organization and subsequent sale are lacking. On the other hand, the uncontradicted evidence shows that nothing whatsoever occurred to enhance the value of the lease in question between May 14 and May 31, 1919. At the time of the transfer the shares exchanged for the lease constituted all of the outstanding stock of the association. The method of determining the value of stock issued in exchange for property has been considered by the Board in Appeal of William Ziegler, Jr., 1 B. T. A. 186, 192, where we held that:
The usual method of appraising stock issued for property where there is no evidence of the market value of the stock is to say that the stock is deemed equivalent in value to the property for which it was issued, and by determining the value of the property one can determine the value of the stock.
See also Appeal of Napoleon B. Burge, supra, page 740. After consideration of all the evidence we find that the fair market value of the 1,500 shares of stock of the Fisher-Whaley Oil Co. received by the partners in exchange for the lease on the day of the exchange was $52,650. It follows that the petitioners realized neither gain nor loss on the exchange.
Reviewed by the Board.

Judgment will he entered under Rule 50.

Smith dissents on the second point.